**MISSOURI GROWTH ASSOCIATION, et al., Plaintiffs–Appellants,**

v.

**METROPOLITAN ST. LOUIS SEWER DISTRICT, Defendant–Respondent.**

No. 69147.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 11, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 20, 1997.

Application to Transfer Denied
April 29, 1997.

Lewis C. Green, Bruce A. Morrison, Kathleen G. Henry, Green, Hennings & Henry, St. Louis, for plaintiffs-appellants.

Alan C. Kohn, Robert F. Murray, Kohn, Shands, Elbert, Gianoulakis & Giljum, LLP, James M. Byrne, St. Louis, for defendant-respondent.

Before SIMON, P.J., and RHODES RUSSELL and HOFF, JJ.

PER CURIAM.

Missouri Growth Association (MGA), a corporation; St. Louis Association of Realtors (SLAR), a corporation; St. Louis Metropolitan Chapter, Community Associations Institute (CAI–StL), a corporation; F.L. Sweeney Corporation, a corporation d/b/a Sweeney–Finn Corporation (Sweeney); Walter A. Droege, Jr.; Robert S. Rothschild, Jr., and Susan H. Rothschild (appellants) appeal the trial court judgment in favor of the Metropolitan St. Louis Sewer District (MSD) which declared MSD's Ordinance No. 9029 to be lawful, valid, and constitutional and not in violation of Article X, § 22(a) of the Missouri Constitution.

On September 24, 1996, this Court issued an opinion affirming the trial court judgment but transferred the case to the Supreme Court because of general interest and importance and for possible reexamination of existing law under Rule 83.02. The Supreme Court retransferred this case to this Court after additional briefing. Judgment affirmed.

In 1980, voters adopted the Hancock Amendment, including Article X, § 22(a) of the Missouri Constitution, which provides:

Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution ... or from increasing the current levy authorized by law or charter ... without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon. Mo. Const. Art. X, § 22(a).

On June 16, 1993, MSD adopted Ordinance No. 9029, which repealed Ordinance No. 8657, and provided a revised schedule of wastewater user charges. From July 1, 1993, until approximately January 1, 1994, MSD billed and collected wastewater charges levied by Ordinance No. 9029. On approximately January 1, 1994, MSD changed its standard form of billing. Under the new and current form of billing, all customers are charged a $.37 billing and collection charge, a $3.72 system availability or "readiness to serve" charge, and a volume charge of $.99 per 100 cubic feet of customer contributed wastewater.

Wastewater volume is determined in one of two ways, depending upon whether or not the customer has a water meter. For customers who have water meters, the volume charge is based on the water usage shown on their home meters. Metered water usage for single-family residential customers is based on the "best equated period," which is a period of water usage between November and April when the amount of outdoor water usage is at a minimum. This minimizes the chance of customers being charged for water used for outdoor purposes since the water used outdoors does not enter MSD's sewer system.

Since all non-residential customers including both commercial and multi-family users have water meters, they are also billed on this basis of usage. However, under Ordinance No. 9222 (which amended Ordinance No. 9029 on May 11, 1994), metered water usage for multi-family metered customers may be determined by either one of two customer options: (1) the "best equated period" option or (2) the year-round meter readings option.

For non-metered customers, the volume charge is based on water consumption figures based on the number of rooms and fixtures on their property. These water consumption measures used in determining water usage for metered and non-metered customers are laid out in MSD's Charter (Plan) and have already been approved by the voters.

On March 25, 1994, appellants filed a two-count petition with the trial court requesting an injunction and other relief. In Count I, appellants contended the charges levied by Ordinance No. 9029 are taxes in nature and, therefore, are subject to the Hancock Amendment. Appellants further contended that because Ordinance No. 9029 was adopted without the approval of a majority of the qualified voters in the district, it was in violation of the Hancock Amendment and, therefore, unlawful and unconstitutional.

In Count II, appellants recognized MSD's duty to increase its revenues, but argued MSD "willfully [and] deliberately refused to take steps to achieve the result in a lawful manner." Appellants further argued MSD has a duty to submit a proposed increase in wastewater charges to the voters for approval pursuant to the Hancock Amendment. Under this count, appellants sought a preliminary writ of mandamus requiring MSD to do so.

In MSD's answer to appellants' Count I, it contends that while the individual appellants have standing, MGA, SLAR, and CAI–StL do not have standing based on the evidence presented. In response to Count II, MSD denied being bound by the Hancock Amendment and denied any duty to get approval from the voters. MSD also filed a motion to dismiss Count II and to quash the preliminary order in mandamus.

The trial court entered judgment in favor of MSD on both counts and held that MSD's Ordinance No. 9029 was not in violation of the Hancock Amendment and therefore lawful, valid, and constitutional. Appellants' motion for new trial was overruled. Appellants now appeal to this Court.

We will review the points on appeal as follows: (1) whether the present claim is precluded by res judicata; (2) whether the organizational plaintiffs have standing; (3) whether MSD's Ordinance No. 9029 is a user fee or a tax after application of the factors laid out in *Keller v. Marion County Ambulance Dist.*, 820 S.W.2d 301, 304–305 n. 10 (Mo. banc 1991); and (4) whether MSD may be required by writ of mandamus to comply with the Hancock Amendment.

█ Upon review, the decree or judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## I. Res Judicata

█ Appellants argue the courts have repeatedly held that MSD's sewer service charges are subject to the Hancock Amendment. Appellants cite *Beatty v. MSD*, 867 S.W.2d 217, 221 (Mo. banc 1993) (*Beatty II* ) for the proposition that where a genuine issue exists as to the nature of the charge imposed by the local government, the court favors voter rights. Appellants also cite *Beatty v. MSD*, 914 S.W.2d 791, 797 (Mo. banc 1995) (*Beatty III* ) for the proposition that MSD may not increase its sewer charges without an election. Therefore, appellants argue the present claim is precluded by res judicata.

█ The doctrine of res judicata provides that where two actions concern the same cause of action, the earlier judgment is conclusive not only as to matters actually determined in the prior action, but also as to other matters which could properly have been raised and determined therein. *Terre Du Lac Assoc., Inc. v. Terre Du Lac, Inc.*, 737 S.W.2d 206, 212 (Mo.App.1987). In order for a party to be barred under traditional res judicata, the cause of action in the new litigation must be identical to the earlier cause of action. *Id.* Where a second action is upon a claim, demand, or cause of action which is different from the prior action, the judgment in the first action does not operate as an estoppel as to matters not litigated in that former action. *Id.*

We find the present claim is not precluded by res judicata and find the cases appellants cite are distinguishable. The issue in *Beatty II* was whether MSD's Ordinance No. 8657 was in violation of the Hancock Amendment because it raised sewer charges without approval of the district voters. 867 S.W.2d at 218. Our Supreme Court reversed and remanded the case with directions to enter an order declaring that MSD's charges, as enacted under Ordinance No. 8657, are subject to the Hancock Amendment. *Id.*

On remand, the trial court found that the individual plaintiffs brought suit as representative taxpayers and that MSD had to credit all its customers' bills. MSD appealed this judgment in *Beatty III.* In that case, our Supreme Court held the plaintiffs brought suit as private litigants and only they were entitled to refunds because MSD violated the Hancock Amendment by increasing its sewer charges under Ordinance No. 8657 without an election. 914 S.W.2d at 797.

The issue before us now concerns whether MSD's Ordinance No. 9029 raises sewer charges without the need for voter approval. Ordinance No. 9029 (adopted June 13, 1993) repealed Ordinance No. 8657 (adopted May 13, 1992 and effective July 1, 1992). Ordinance No. 9029 is a separate and distinct ordinance from Ordinance No. 8657 which was ruled on in *Beatty II* and *Beatty III.* Ordinance No. 9029 changes the method of billing MSD customers. Under Ordinance No. 9029, MSD charges customers a volume charge based on the amount of wastewater contributed after sewer services are provided. Additionally, this volume charge is based on a new study conducted in an effort to bill customers for sewer charges that bear a direct relationship to services received. Therefore, we find the present claim is not barred by res judicata.

## II. STANDING

■ In the next point we address, appellants argue the trial court erred by ruling the organizational plaintiffs lack standing.[1] Appellants argue that because undisputed evidence shows SLAR pays sewer service charges, it is entitled to a setoff of the unlawful charges. Additionally, appellants cite *Village of Arlington Heights v. Metropolitan Housing Development Corp.* for the contention that because the individual plaintiffs admittedly have standing, the court should not waste its time considering whether others have standing. 429 U.S. 252, 264 n. 9, 97 S.Ct. 555, 562 n. 9, 50 L.Ed.2d 450 (1977). They further contend that because these organizational plaintiffs proved their standing as taxpayers, they may bring this suit as any taxpayer has standing to do under the Hancock Amendment.

The *Village* court stated that because of the presence of a plaintiff who had standing in his own right, ". . . we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit." 429 U.S. at 264 n. 9, 97 S.Ct. at 562 n. 9. Because of this conclusion, the *Village* court held the corporate plaintiffs could continue with the suit.

Similarly, in the present case, our review of this suit will continue because the individual plaintiffs, Robert S. Rothschild, Jr., Susan H. Rothschild, and Walter Droege, Jr., pay taxes and sewer charges and therefore, have standing. However, the other distinct concern in this case is whether the organizational plaintiffs, SLAR, MGA, and CAI–StL, have standing and whether they would have a right to reimbursement if MSD's Ordinance No. 9029 was found to be in violation of the Hancock Amendment.

■ Standing for all plaintiffs may not be presumed merely because some plaintiffs in the suit have standing. For this reason, we will more thoroughly analyze whether the organizational plaintiffs have standing. First, we will determine whether these organizations have standing in their own right to bring suit and alternatively, whether they have standing on behalf of their members to bring suit.

1. For purposes of this appeal, appellants' argument regarding standing is the first issue addressed rather than the second, as provided in appellants' brief.

Also, because appellants do not contest the trial court's finding that Sweeney lacked standing, we will not address the issue.

SLAR is a not-for-profit organization located in St. Louis County. It owns two for-profit corporations, one of which is in the county and owns real estate in the county. However, at trial, SLAR's executive vice-president testified he was not sure which corporation owns the county real estate and therefore, which corporation pays MSD wastewater user charges. Thus, based on the record, SLAR did not meet its burden of proving it paid sewer charges. Consequently, it did not meet its burden in proving it had standing in its own right to bring this suit. Therefore, the trial court did not err in finding SLAR lacks standing.

MGA is also a not-for-profit organization that alleges to have standing in its own right. MGA's office is also in St. Louis County. However, MGA does not pay any real estate taxes directly, nor does it pay any personal property taxes. Furthermore, while some of its members receive wastewater user bills, MGA itself does not receive or pay any wastewater user bills. Therefore, the trial court did not err in finding MGA does not have standing in its own right to bring this suit.

CAI–StL is the last not-for-profit organization that alleges to have standing in its own right. However, CAI–StL does not own real estate, nor does it pay real estate taxes, personal taxes, or wastewater user charges. Therefore, the trial court did not err in finding that CAI–StL also lacks standing to bring this suit on its own behalf.

Alternatively, the organizational plaintiffs argue they proved their standing to represent the interests of their members. Appellants cite *Missouri Outdoor Advertising Association, Inc. v. Missouri State Highways and Transportation Comm'n*, 826 S.W.2d 342, 344 (Mo. banc 1992) for this contention. In *Missouri Outdoor Advertising*, the court applied the factors laid out in *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). The *Missouri Outdoor Advertising* court then held that in the particular case before it, the association had standing to bring suit on behalf of its members. *Id.* However, the court also stated that its holding "should not preclude a holding in a particular case where the association is not an appropriate party to bring suit." *Id.*

Under *Hunt*, an association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Id.*

Applying the *Hunt* factors to determine the organizational standing of MGA, SLAR, and CAI–StL, we hold that none of these organizations have standing to bring suit. MGA fulfills the first factor of the *Hunt* test because it is a not-for-profit trade association which represents the interests of sixty corporate members, some of which pay taxes and sewer bills. However, all three organizations fail the second factor because the effect of MSD's wastewater user charges is not an interest that is necessarily "germane" to their organizational purposes.

According to MGA's charter, its organizational purpose is to promote common business interest of people and companies involved in developing, owning, and operating real estate. The effect of MSD's wastewater user charges is not necessarily a "germane" interest to MGA's organizational purpose. Such an interest is too remote to be germane to the very general and broad purposes of developing, owning, and operating real estate. Therefore, MGA does not have standing to bring this suit on behalf of its members.

The charter purpose of SLAR is to promote the interests of real estate dealers. Because these real estate dealers do not pay their own sewer bills, they would not have standing to bring this suit. Therefore, SLAR does not have standing on their behalf. Furthermore, the paying of sewer bills is not "germane" to the general and vague purpose of promoting the interests of real estate dealers. Thus, SLAR does not have standing to bring this suit.

CAI–StL's charter purposes is to educate and conduct research to benefit homeowners' associations. Its members include community associations and condominium associations who pay their own sewer charges. However, paying MSD sewer charges has nothing to do with CAI–StL's charter purpose. Therefore, CAI–StL also does not have standing to bring suit on its members behalf.

Additionally, we note that we have previously held an organizational plaintiff lacked standing to bring suit even without applying the *Hunt* factors. *Citizens for Safe Waste Management v. St. Louis County,* 810 S.W.2d 635, 639 (Mo.App.1991). In *Citizens,* the organizational plaintiff was a not-for-profit corporation whose purpose was to promote and study environmentally safe methods of waste management, lessen dependence on landfills, and educate the public about safe waste management. *Id.* at 638–639. Some of its members owned property close to a landfill site and brought suit individually because of dust, noise, and other effects of the landfill. *Id.* at 639. The organization also filed suit making the same claim as the individual members. *Id.*

In *Citizens,* we held a corporation must show that it has a legally cognizable interest separate from the interest of its members. *Id.* We concluded the organization did not demonstrate any "specific and direct effect on any interest sufficient to confer standing." *Id.* Additionally, we reasoned that because environmental damage claims are susceptible by nature to many parties, it is important to limit such claims to parties who can demonstrate "a direct, specific, legally cognizable interest distinct from the interests of the general public." *Id.*

■ Similarly, even if we do not apply the *Hunt* factors in the present case, neither MGA, SLAR, nor CAI–StL have standing in this suit because they merely assert the same claims as their individual members. They assert MSD violated the Hancock Amendment in instituting its new ordinance without voter approval. Because these are legally separate and distinct organizations from their members, they must assert a legal interest separate from its members. Since none of the organizational plaintiffs do so,

and because of the relative importance of limiting such claims to parties that may so demonstrate, we hold that MGA, SLAR, and CAI–StL lack standing in this suit.

Finally, we find significant that our Supreme Court in *Beatty III* denied representative taxpayer status and confined relief to the three named plaintiffs. Noting that *Beatty II* was not prosecuted by the plaintiffs as a class action pursuant to Rule 52.08 of the Missouri Rules of Civil Procedure, our Supreme Court found "[I]t was error to adjudicate the rights and obligations of the approximately 420,000 MSD customers not before the court." 914 S.W.2d at 792. The allowance of organizational standing to MGA, SLAR, and CAI–StL and relief to their members would permit circumvention of class action rules.

While we find the organizational plaintiffs lack standing, review of this suit will continue because the individual plaintiffs, Robert S. Rothschild, Jr., Susan H. Rothschild, and Walter Droege, Jr., pay taxes and sewer charges and therefore, have standing to proceed with this appeal.

### III. User Fee or Tax

■ In their next point on appeal, appellants contend the trial court erred in entering judgment for MSD on Count I because MSD's Ordinance No. 9029 was enacted without approval of the district voters. Appellants assert this makes Ordinance No. 9029 in violation of the Hancock Amendment because the charges levied by Ordinance No. 9029 were regular sewer service charges subject to voter approval before enactment.

■ The *Keller* factors are used to determine whether a revenue increase by a local government is an increase of a tax, license, or fee which requires voter approval under the Hancock Amendment. *Keller,* 820 S.W.2d at 304–305 n. 10. Under *Keller,* the factors to consider are as follows:

1. When is the fee paid?—Fees subject to the Hancock Amendment are likely due to be paid on a periodic basis while fees not subject to the Hancock Amendment are likely due to be paid only on or after

provision of a good or service to the individual paying the fee.

2. Who pays the fee?—A fee subject to the Hancock Amendment is likely to be blanket-billed to all or almost all of the residents of the political subdivision while a fee not subject to the Hancock Amendment is likely to be charged only to those who actually use the good or service for which the fee is charged.

3. Is the amount of the fee to be paid affected by the level of goods or services provided to the fee payer?—Fees subject to the Hancock Amendment are less likely to be dependent on the level of goods or services provided to the fee payer.

4. Is the government providing a service or good?—If the government is providing a good or a service, or permission to use government property, the fee is less likely to be subject to the Hancock Amendment. If there is no good or service being provided, or someone unconnected with the government is providing the good or service, then any charge required by and paid to a local government is probably subject to the Hancock Amendment.

5. Has the activity historically and exclusively been provided by the government?— If the government has historically and exclusively provided the good, service, permission or activity, the fee is likely subject to the Hancock Amendment. If the government has not historically and exclusively provided the good, service, permission or activity, then any charge is probably not subject to the Hancock Amendment.

*Id.*

The first factor considers when the fee is paid. Appellants argue this factor is in their favor. Appellants contend that regardless of the timing, MSD's fee is charged regularly, so it is more like a tax then a fee. We disagree.

The evidence indicates that the new 1993 user charges under Ordinance No. 9029 are charged monthly, only *after* the sewer service is provided. Although this charge is billed periodically, payment is due "only on or after provision of a good or service," making it more like a user fee than a tax. This factor, therefore, is resolved in favor of MSD.

The second factor concerns who pays the fee. Appellants contend MSD bills all accounts, even when there is no use of the MSD sewer system. We disagree.

The evidence indicates that only those individuals who actually use MSD's services pay the charge. For instance, approximately 75,000 properties within MSD's boundaries do not receive sewer charge bills because they use septic tanks, the water is turned off, or the buildings have either been torn down, unimproved, or have not yet been constructed. Therefore, this factor is also resolved in favor of MSD.

The third factor considers whether the amount of the fee to be paid is affected by the level of goods or services provided to the fee payer. Appellants contend MSD's charges under Ordinance No. 9029 bear no direct relationship to the level of services provided. They contend this is evident by reviewing the testimony of the rate consultant for Black and Veatch and the methodology of calculating the charges. They argue that all customers are paying for the construction of the Lemay–River Des Peres overflow regulation system, which does not serve most of the customers. Additionally, appellants argue the allocation of desired revenues among classes of customers is generally a product of averages, estimates, and assumptions. Finally, appellants assert the allocation of desired revenues to individual customers bears no relationship to services received. Therefore, appellants contend that because MSD is still charging flat rates to its customers as user charges, the variable charges cannot bear any direct relationship to the level of services received. We disagree.

The evidence indicated that unlike the 1992 residential user charges, MSD's 1993 user charges under Ordinance No. 9029 are not uniform flat charges. Rather, the 1993 charges under Ordinance No. 9029 are based on a new study that determined sewer services on an individual basis as measured by an individual customer's water usage. While all customers are charged $.37 for billing and collection and $3.72 for system availability, customers are also charged by individual consumption. Customers are charged $.99 per

100 cubic feet of contributed wastewater volume.

For customers who have water meters, the consumed volume is determined by their metered water usage. However, under Ordinance No. 9029, if the customer proves that a portion of the water measured by the meter does not enter the wastewater system, MSD is authorized to determine the percentage of the water shown by the water meter which enters MSD's wastewater system.

For non-metered customers, the consumed volume charge is determined by using water consumption figures based on the number of rooms and fixtures on their property. Under Ordinance No. 9029, however, a user of non-metered residential property may request the installation of a meter. Furthermore, these two methods of measuring wastewater usage for metered and non-metered customers have both been specifically approved by the voters in MSD's Charter (Plan), Article 3, § 3.020(16).[2] Therefore, the charge bears a direct relationship to the services provided. This factor is also resolved in favor of MSD.

The fourth factor considers whether the government is providing a service or a good. Appellants concede MSD provides a service but argue this factor is less relevant than the others because government agencies may always claim they are providing services. This factor, however, was found in favor of MSD in *Beatty II*, and the situation remains the same today. 867 S.W.2d at 221.

The fifth and final *Keller* factor is whether the activity has been historically and exclusively provided by the government. As in *Beatty II*, this factor remains inconclusive. 867 S.W.2d at 221.

█ In determining whether a charge is a user fee or a tax and therefore subject to the Hancock Amendment, we consider each factor individually and decide in favor of the citizen or the agency. In *Beatty II*, our Supreme Court found in favor of MSD on the second and fourth factors, found in favor of plaintiffs on the first and third factors, and found the last factor to be inconclusive. *Id.* at 220–221. In *Home Builders Ass'n. of Greater St. Louis v. City of St. Peters,* this Court held that since four of the five *Keller* factors established the charge was a user fee and not a tax, the fee was not subject to the Hancock Amendment. 868 S.W.2d 187, 190–191 (Mo.App.1994).

Here, after applying the *Keller* factors to MSD's 1993 user charges under Ordinance No. 9029, four of the five factors favor MSD. Because MSD has enacted Ordinance No. 9029 which made significant changes in its billing of user charges, this Court finds in favor of MSD on the first and third factors as well as the second and fourth factors, thereby tipping the scale in favor of MSD. Therefore, we hold the 1993 charge under Ordinance No. 9029 is a user fee and not a tax subject to the Hancock Amendment. Accordingly, we affirm the trial court's judgment.

█ Alternatively, appellants argue the *Keller* factors do not apply in this case for several reasons. First, appellants argue the fees exempted from the Hancock Amendment under *Keller* do not include fees charged by a political subdivision whose governing body is appointed, rather than elected. Second, appellants argue MSD's sewer charges are "taxes in everything but name ... paid into the general fund of the government to defray customary governmental expenditures." Third, appellants argue that because MSD's sewer service charges have

---

**2.** MSD's Charter (Plan) states that MSD's Board of Trustees are authorized:

[t]o establish by ordinance a schedule or schedules of rates, rentals, and other charges, to be collected from all the real property served by the sewer facilities of the District, whether public or private, and to prescribe the manner in which and time at which such rates, rentals, and charges are to be paid, and to change such schedule or schedules from time to time as the Board may deem necessary, proper, or advisable, and to collect or enforce collection of all such charges. Such schedule or schedules may be based upon any classifica-

tions or sub-classifications which the Board may determine to be fair and reasonable, whether similar or dissimilar to those hereinafter enumerated and which are or shall be established by ordinance, including but not limited to: (a) the consumption of water on premises connected with such facilities, taking into consideration commercial, industrial, and agricultural use of water; (b) the number and kind of plumbing fixtures connected with such facilities; (c) the number of persons served by such facilities; or (d) any combination of the factors enumerated.

historically been "levied," it demonstrates they are taxes in everything but name.

We reject appellants' non-*Keller* analysis because our Supreme Court clearly adopted this five-factor analysis in *Beatty II* when it decided whether MSD's previous user charges were subject to the Hancock Amendment. We are bound by the decisions of the Missouri Supreme Court. Mo. Const. Art. V, § 2.

In the last point we address, appellants contend the trial court erred in entering judgment for MSD on Count II because MSD has a duty to design an appropriate rate structure and present it to the voters for approval. Appellants seek a writ of mandamus directing MSD to develop such a proposal for a reasonable increase of wastewater charges and to submit it to the voters in accordance with the Hancock Amendment.

Because we find MSD's 1993 charge under Ordinance No. 9029 is a user fee and not a tax subject to the Hancock Amendment, appellants' request for a writ of mandamus is now moot.

Judgment affirmed.