**Merrill LARSON, et al., Appellants,**

v.

**CITY OF SULLIVAN, Missouri, Respondent.**

**No. ED 80469.**

Missouri Court of Appeals, Eastern District, Division Three.

Oct. 1, 2002.

Application for Transfer Denied Jan. 28, 2003.

John W. Waller, Sullivan, MO, Dennis Owens, Kansas City, MO, for appellant.

Kevin M. O'Keefe, St. Louis, MO, Matthew A. Schroeder, Union, MO, for respondent.

Before MARY R. RUSSELL, P.J., CLIFFORD H. AHRENS and JAMES R. DOWD, JJ.

PER CURIAM.

Merrill Larson and other residents of the City of Sullivan ("residents") appeal from the judgment of the Circuit Court of Franklin County in favor of the City of Sullivan ("Sullivan") finding that tap-on fees ("fees") imposed upon residents for a new sewerage system are lawful. The trial court specifically determined that the applicable law authorizes these fees without voter approval, and that the fees are not an unreasonable, arbitrary and capri-

cious exercise of power by the city. We affirm.

The citizens of Sullivan passed a sewage and water revenue bond on November 5, 1996. The specific question presented to voters was:

Shall the City of Sullivan, Missouri, issue its combined waterworks and sewerage system revenue bonds in the amount of $3,305,000 for the purpose of extending and improving the City's combined waterworks and sewerage system, the cost of operation and maintenance of said combined waterworks and sewerage system and the principal of interest on said revenue bonds to be payable from the revenues derived by the City from the operation of its combined waterworks and sewerage system, including all future improvements and extensions thereto?

Prior to the election, Sullivan mailed a flyer containing information about the project to households in the city. This brochure informed the homeowners that the cost of the new system would be paid for by the revenue bonds, existing city funds and access charges per household of $3,750 to $4,250. On July 6, 1999, city ordinance number 2581 was enacted providing for the payment of connection fees to the new sewerage system. Residents were charged $3,750 for a gravity connection or $4,250 for a grinder pump connection to the new system. Prior to this ordinance, the connection fee was $60 or $75 for the old system. People using the old sewer system were required to pay only the $60 or $75 connection fee. In addition to the connection fee, any person connecting to the new city sewer was required to pay an approved plumber to lay the lines from the resident's house to the property line for the system's hook-up. Prior to the enactment of the increased fee, a public hearing was held disclosing the amounts of the fees for the new sewer system.

After paying the fees, residents sued Sullivan asking that city ordinance number 2581 be declared null and void. Trial commenced on May 22, 2001. During the trial, evidence was presented that Sullivan provided the connection to the main line of the new system. A tap to the main line was required in order for the homeowners to connect to the new system, and Sullivan furnished the material and labor to make the actual incision to the main and insert the connection. Additionally, Sullivan ran a lateral line from the main to the property line of the homeowner. An inspection was also provided in return for the increased fee. Richard Ramstein ("Ramstein"), the city engineer, testified that grinder pumps, which were installed by the city to make the connection for some homes, cost an estimated $5,000. In addition to the cost incurred for the tap itself, Sullivan incurred the expense of running a lateral line from the main to the property line. According to Ramstein, the extension of this line cost Sullivan an average $20 to $30 per foot of line. He estimated that the average distance from the main to the property lines was 25 feet, and the cost Sullivan incurred to run the lateral line was approximately $1,500 on average. This spared the homeowner the expense of excavation and extension of the line from the main. The increased fee is used to compensate Sullivan for the charges incurred in providing the connection to the main line and extending the line to the property of the homeowner as well as for the inspection. On September 28, 2001, the trial court entered its judgment. The trial court found that the fees charged to residents were unfair in the context of an increase of fifty times from the fee charged for connection to the old sewer system, as well as there was a substantial financial hardship resulting from the in-

creased fee. However, the court found that the fees were lawful. The court stated that applicable law, statutory and otherwise, authorized the fees in question without requiring voter approval. Additionally, the court determined that the fees were not an unreasonable, arbitrary and capricious exercise of power, nor were they induced by fraud, collusion or bad faith. Residents now appeal from the judgment of the trial court.

■ The judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ In their first point on appeal, residents claim that the trial court erred in granting judgment for Sullivan because city ordinance number 2581 levied a tax without a majority vote and as such was unconstitutional in violation of the Hancock Amendment to the Missouri Constitution. Article X, section 22 of the Missouri Constitution provides that "[c]ounties and other political subdivisions are hereby prohibited from ... increasing the current levy of an existing tax, license or fees ... without the approval of the required majority of the qualified voters of that ... political subdivision voting thereon." Residents argue that the connection fee imposed by ordinance number 2581 constitutes a fee subject to the Hancock Amendment and therefore the ordinance was unconstitutional because it was not approved by a majority of the voters in Sullivan.

In *Keller v. Marion County Ambulance Dist.*, 820 S.W.2d 301 (Mo. banc 1991), the Missouri Supreme Court listed five factors which are to be considered in determining whether an increase is a "tax, license or fee" requiring voter approval under the Hancock Amendment. These are:

"1) When is the fee paid?—Fees subject to the Hancock Amendment are likely due to be paid on a periodic basis while fees not subject to the Hancock Amendment are likely due to be paid only on or after provision of a good or service to the individual paying the fee.

2) Who pays the fee?—A fee subject to the Hancock Amendment is likely to be blanket-billed to all or almost all of the residents of the political subdivision while a fee not subject to the Hancock Amendment is likely to be charged only to those who actually use the good or service for which the fee is charged.

3) Is the amount of the fee to be paid affected by the level of good or services provided to the fee payer?— Fees subject to the Hancock Amendment are less likely to be dependent on the level of goods or services provided to the fee payer while fees not subject to the Hancock Amendment are likely to be dependent on the level of goods or services provided to the fee payer.

4) Is the government providing a service or good?—If the government is providing a good or a service, or permission to use government property, the fee is less likely to be subject to the Hancock Amendment. If there is no good or service being provided, or someone unconnected with the government is providing the good or service, then any charge required by and paid to a local government is probably subject to the Hancock Amendment.

5) Has the activity historically and exclusively been provided by the government?—If the government has historically and exclusively provided

the good, service, permission or activity, the fee is likely to be subject to the Hancock Amendment. If the government has not historically and exclusively provided the good, service, permission or activity, then any charge is probably not subject to the Hancock Amendment."

*Id.* at 311. The trial court determined that the connection fees were not subject to the Hancock Amendment under the applicable factors listed above. We affirm the decision of the court.

Residents do not address the first *Keller* factor in their brief, which is the timing of payment. The fee in question is not an amount due on a periodic basis, but rather, it is only assessed once. Thus, this factor is resolved in favor of Sullivan.

Next, we consider who pays the fee. Residents argue that "all or almost all of the residents of the political subdivision" are subject to the connection fee. However, we do not agree. Homeowners using the old sewer system were not required to pay the increased connection fee. Only those people who had not previously been connected to the old system were required to pay the fee in order to hook onto the new system. The fee was not charged against any vacant lots which did not use the system. Therefore, only those benefiting from the new system were charged the increased amount. The second factor is resolved in favor of Sullivan.

The third factor focuses upon the level of goods or services provided to the person paying the fee. According to the Supreme Court in *Keller,* if a fee is not dependent on the level of goods or services being provided, it is likely to be subject to the Hancock Amendment and require a majority vote for approval. Residents argue that the connection fee "far exceeded" the value of the inspection services it purported to be based upon. They state that the

homeowners subject to the increased fee are forced to pay Sullivan for the same services which they receive from privately retained contractors who are paid by the homeowners. This argument is misguided. While ordinance number 2581 does provide that the homeowner is responsible for costs of the connection to the system, it also states that the fee is to be paid in order to cover the cost of material and equipment required to make the connection. Residents read these portions of the ordinance to be inconsistent, however, we do not. The fee is used to compensate the city for providing the connection or tap-on to the main line, extending a lateral line to the property line of the homeowner, installing necessary grinder pumps, and inspection services. Then the homeowner is responsible for the cost of connecting the sewer line from the property line to the home or other structure. Thus, while residents argue that they are, in fact, paying for the very same service independently that Sullivan is charging the fee for, they are incorrect. The city, by making the connection to the main line and extending the sewer to the property line, allows the homeowner to individually forego the complete cost of the extension of the line from the property line to the main, as well as the cost of the connection to the main. Instead, the homeowner is responsible only for the connection from the home to the property line, and the homeowner pays the increased fee to compensate Sullivan partially for the expenses the city incurred in making the tap on to the main line and the extension of the lateral line. Under ordinance number 2581, the fee is paid for the cost of material and equipment required to make the connection to the main line. The level of goods and services provided to residents is consistent with the fees being charged. As discussed above, the city engineer testified that the connec-

tion made by the city to the main sewer line can cost an estimated $5,000 in some circumstances. In addition to the cost of the actual connection, Sullivan incurred the expense of extending a lateral line from the main to the property line of the homeowners. This line cost Sullivan an estimated $1,500 on average, and homeowners were spared the expense of excavation and extension of the line. Therefore, the fee is dependent upon the level of goods and services being provided to residents by way of connection to the main line. Factor number three is resolved in favor of Sullivan.

Fourth, we consider whether a good or service was provided by Sullivan. Again, residents argue that little or nothing in the way of a good or service is performed in exchange for the increased fee. However, we disagree. The system itself is a good or service, which is provided in return for the fee. Residents did not have the benefit of a sewer system prior to this. In return for the payment of the fee, residents now have the benefit of the system. The fourth factor is resolved in favor of Sullivan.

Finally, the fifth factor is whether the government has historically and exclusively provided the activity. In the present case, Sullivan had previously provided sewer services to some of its citizens. Therefore, while not all citizens of Sullivan were provided this service by the government, it was a service historically provided by the city. The final factor is resolved in favor of the residents.

After reviewing the *Keller* factors in light of the particular circumstances of the present case, four of the five factors favor Sullivan. Therefore, the connection fee imposed by ordinance number 2581 is not subject to the Hancock Amendment. Point denied.

■ In their second point, residents assert that the trial court erred in granting judgment for the City of Sullivan because as a fourth-class city, it did not have the legal authority to increase the connection fees without voter approval. Specifically, residents argue that there is no statutory authority for Sullivan to increase the connection fee pursuant to ordinance number 2581. Residents allege that under several sections of Chapter 250 of the Missouri Revised Statutes, Sullivan was not authorized to raise the fee to construct, extend or renew the sewer system without voter approval.

Section 250.010 RSMo (Cum.Supp. 1999)[1] authorizes cities, towns and villages of this state to "acquire, construct, improve or extend and to maintain and operate a sewerage system and to provide funds for the payment of the cost of such acquisition, construction, improvement or extension and operation as hereinafter provided." Section 250.040 provides several alternatives for meeting the cost of such a system. These include, among others, "proceeds of special assessments levied and collected in accordance with law;" and "proceeds of revenue bonds ... payable solely from the revenues to be derived from the operation of such sewerage system ...".

Sullivan asserts that it chose to meet the cost of a new sewer system using the proceeds of revenue bonds. Residents argue that Sullivan is meeting the cost of constructing the new system through special assessments. Section 250.070 provides that no city, town or village shall issue bonds to construct, improve or extend its sewer system "payable from the revenues to be derived from the operation of any

---

**1.** All further statutory references are to RSMo (Cum.Supp.1999) unless otherwise indicated.

such system," unless it is approved by the voters. Sullivan submitted a proposition to issue bonds for extension and improvement of the city's sewer system to the voters pursuant to section 250.070. On November 5, 1996, the citizens of Sullivan passed the sewage and water revenue bond.

Section 250.120 imposes a mandatory duty upon cities, towns or villages issuing revenue bonds to "fix and maintain rates and make and collect charges for the use and services of the system for the benefit of which such revenue bonds were issued, sufficient to pay the cost of maintenance and operation thereof," and to pay the principal and interest on the revenue bonds themselves. Additionally, section 250.233 authorizes the imposition of tap-on or connection fees by a city, town or village. The statute notes that such charges "shall be in addition to" charges for maintenance, repair and administration of the system.

Residents argue that the money collected for the increased connection fees is being used to finance the construction of the sewer system. Admittedly, the revenue from these fees is being used in part to make improvements to the sewer system in Sullivan as a whole, which includes construction of portions of the new system. Gary Ponderum, the former mayor of Sullivan, testified that the fees were part of the overall financing mechanism to construct the main lines. The intent was to fund the cost of the new system with revenue bonds, general revenue funds and fees. The increased fees are placed in the water and sewer fund from which payments on the revenue bonds are made, as well as payments for maintenance expenses and for new projects to improve the sewer system in Sullivan. Section 250.233 plainly states that charges for sewer services, including tap-on or connection fees, may be imposed in addition to charges collected for maintenance and repair of the system. Here, construction of the sewer main included the installation of connections or tap-ons, construction of lateral lines, installation of grinder pumps in pressure connections, and inspection services. There is no limitation in section 250.233 prohibiting the application of the connection fees for these purposes. Point denied.

■ In their final point on appeal, residents allege that the trial court erred in granting judgment for the City of Sullivan because the increase in connection fees was an unreasonable, arbitrary and capricious exercise of police power under section 250.233 RSMo. Initially we note that Sullivan argues that residents failed to preserve this issue at trial and did not address the issue until the filing of their post-trial brief with the trial court. In their second amended petition, however, residents alleged that under Chapter 250 Sullivan is not permitted to "arbitrarily charge all new users $3,650.00 and $4,250.00 permit and inspection fees . . .". Additionally, residents pleaded that the charge of this fee is "unreasonable, arbitrary and has no basis in the law . . .".

The trial court determined that while the tap-on or connection fees are high, they are based "at least in part on the higher construction costs attributable to this particular project." Again, we note that the city engineer, Richard Ramstein ("Ramstein"), testified that Sullivan paid for the grinder pumps, which were installed for the individual homes. According to Ramstein, these grinder pumps cost an estimated $5,000. In addition, as noted previously, Sullivan paid for the cost of constructing tap-ons or connections to the sewer main line, and the cost of constructing lateral lines from the main to the landowner's property lines. We conclude there was substantial evidence to support

the trial court's determination that the increased fee was not an unreasonable, arbitrary or capricious exercise of police power under section 250.233. Point denied.

The judgment of the trial court is affirmed.[2]

2. Sullivan's Motion to Strike "Preliminary Statement" in Appellants' Brief is denied.