**BUILDING OWNERS & MANAGERS ASSOCIATION OF GREATER KANSAS CITY, et al., Respondent,**

v.

**CITY OF KANSAS CITY, Missouri, Appellant.**

**No. WD 66618.**

Missouri Court of Appeals, Western District.

June 12, 2007.

Application for Transfer to Supreme Court Denied July 31, 2007.

Application for Transfer Denied Sept. 25, 2007.

Alan L. Holtkamp, Kansas City, MO, for Appellant.

Michael J. Abrams, Kansas City, MO, for Respondent.

Before HOLLIGER, P.J., SPINDEN and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

The City of Kansas City, Missouri ("City") appeals from a judgment invalidating three ordinances that required businesses and multifamily dwellings to pay fees for annual fire inspection certificates. The City contends the circuit court erred in finding the ordinances in violation of the Hancock Amendment. For reasons explained herein, we find no error and affirm the court's judgment.

## Factual and Procedural History

Prior to 2003, the City's Fire Department generally conducted fire inspections of businesses and multifamily residential buildings in response to complaints and, occasionally, at the Department's discretion. Routine inspections were not required and no fees were charged, as the inspections were funded by the City's general revenues.

In the fall of 2002, City officials began considering ways to generate revenue within the Fire Department to support its functions. The Fire Department recommended conducting annual fire inspections and charging businesses and multifamily dwellings a fee for a "Certificate of Compliance." The City Council adopted the Department's recommendations by enacting two ordinances, No. 030492 ("2003 Ordinance") and No. 031388 ("2004 Ordinance"). The ordinances established a sliding fee schedule of up to $100 for the

certificate, based upon the square footage of each business or multifamily dwelling inspected.

On April 5, 2004, the Building Owners & Managers Association of Greater Kansas City and three property management companies (collectively "Plaintiffs") filed suit against the City, challenging the two ordinances as violations of the Hancock Amendment. Following a hearing, the circuit court denied the Plaintiffs' motion for a preliminary injunction and set the matter for trial.

While the case was pending, the City Council passed Ordinance No. 050349 (2005 Ordinance), which effectively amended the two prior fire inspection ordinances. The 2005 ordinance eliminated the option of obtaining a "Certificate of Compliance" and, instead, *required* businesses and multifamily dwellings to obtain an annual "fire inspection certificate" at a fee not to exceed $100.00. The new ordinance alternatively allowed the building owners to retain private engineers to conduct the annual inspection. If that alternative was exercised, building owners would pay the City $10.00 for the fire inspection certificate. Except for these new provisions, the 2003 and 2004 ordinances remained in effect.

The Plaintiffs amended their petition, on June 27, 2005, to challenge all three of the fire inspection ordinances. Following a bench trial, the circuit court entered a declaratory judgment in favor of the Plaintiffs. The court determined that the three ordinances violated "Article X, Section 22 (Hancock Amendment) of the Missouri Constitution" by imposing new fees without the approval of a majority of qualified voters. The court further found that the 2005 ordinance was "unconstitutionally vague in violation of Article I, Section 10 of the Missouri Constitution." The court ordered the City to reimburse property owners for all fire inspection fees collected under the invalidated ordinances.

The City brings three points on appeal. In Points I and II, the City contends the circuit court erred in concluding the ordinances violated the Hancock Amendment. In Point III, the City argues the circuit court erroneously determined the 2005 ordinance was void for vagueness. Because we affirm on Points I and II, we need not address Point III.

## STANDARD OF REVIEW

A declaratory judgment is reviewed under the same standard as any other court-tried matter. *Levinson v. State,* 104 S.W.3d 409, 411 (Mo. banc 2003). We must affirm the judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously applies or declares the law. *Larson v. City of Sullivan,* 92 S.W.3d 128, 131 (Mo.App.2002). In reviewing the record, we consider the evidence and inferences in the light most favorable to the circuit court's ruling, disregarding all contrary evidence and inferences. *Liquidation of Prof'l Med. Ins. Co. v. Lakin,* 88 S.W.3d 471, 475–76 (Mo.App.2002). We defer to the circuit court's factual determinations, but all questions of law are reviewed *de novo. Am. Family Mut. Ins. Co. v. Tickle,* 99 S.W.3d 25, 28 (Mo.App. 2003).

## APPLICATION OF THE HANCOCK AMENDMENT

The Hancock Amendment prohibits a political subdivision "from increasing the current levy of an existing tax, license, or fees ... without the approval of the required majority of qualified voters." Mo. Const. art. X, 122(a). In *Keller v. Marion County Ambulance District.,* 820 S.W.2d 301, 304 n. 10 (Mo. banc 1991), the Missouri Supreme Court identified five factors to be considered in determining

whether an increase is a tax, license, or fee requiring voter approval under the Hancock Amendment. The City contends the circuit court erred in applying this five-factor test and that its findings on some of the factors were against the weight of the evidence.

To resolve these points, we must review each *Keller* factor individually and consider whether it weighs in favor of the Plaintiffs' position as a violation of the Hancock Amendment or the City's position as a non-violation. If the application of the *Keller* factors creates a genuine doubt as to whether a new or increased charge constitutes a "tax, license, or fee" covered by the Hancock Amendment, we resolve the uncertainty in favor of requiring voter approval. *Avanti Petroleum, Inc. v. St. Louis County*, 974 S.W.2d 506, 511 (Mo. App.1998).

1) *When is the fee paid?* Fees subject to the Hancock Amendment are likely due to be paid on a periodic basis while fees not subject to the Hancock Amendment are likely due to be paid only on or after provision of a good or service to the individual paying the fee.

The circuit court found this first factor favored the Plaintiffs' position because the ordinances mandated payment of an annual fee for the fire inspection certificate. The record supports this finding. The 2005 Ordinance clearly states that "[a]n *annual fire inspection certificate is required* for the operation of multifamily residential dwellings and businesses." (Emphasis added.) The Ordinance further states that "[t]he Fire Prevention Division shall charge a fee for ... fire inspection certificates." Clearly, the purpose of the ordinance is to require the payment of the fire inspection certificate fee on a periodic basis.

The City argues the circuit court misapplied this first factor by failing to consider that no fees are charged until the inspections are completed. However, the critical inquiry under this factor is not the timing of the fee "but the regularity with which the fee is paid." *Beatty v. Metro. St. Louis Sewer Dist.*, 867 S.W.2d 217, 220 (Mo. banc 1993). Our court has previously determined that the required payment of an annual fee may indicate a violation of the Hancock Amendment. *Ashworth v. City of Moberly*, 53 S.W.3d 564, 575 (Mo. App.2001).

The City also analogizes the fire inspection certificate fees to the sewer district fees that were found not to violate the Hancock Amendment in *Missouri Growth Ass'n. v. Metropolitan St. Louis Sewer District*, 941 S.W.2d 615 (Mo.App.1997). In that case, the Sewer District imposed a monthly user fee that was based on a customer's water usage. *Id.* at 623. If no water was used or the water was turned off for a period of time, no fees were owed. *Id.* Thus, the fees in *Missouri Growth* were not necessarily incurred on a regular or periodic basis. By contrast, the City's 2005 ordinance required building owners to pay the annual fire inspection certificate fee in order to operate their businesses and multifamily dwellings. The fee was not based on the provision of a service that building owners could accept, reject, or use on a limited basis. Because the instant case does not involve a *user* fee like that in *Missouri Growth*, the mandatory annual fee imposed here more likely runs afoul of the Hancock Amendment.

2. *Who pays the fee?* A fee subject to the Hancock Amendment is likely to be blanket-billed to all or almost all of the residents of the political subdivision while a fee not subject to the Hancock Amendment is likely to be charged only to those who actual-

ly use the good or service for which the fee is charged.

█ The circuit court found this factor favored the Plaintiffs because the fire inspection certificate fees were charged to all businesses and multifamily dwellings. In so ruling, the court misapplied the second factor as explained in *Keller*. The record does not indicate that the fees were assessed to "all or almost all" City residents or property owners. There also is no indication that the fees were assessed regardless of whether a fire inspection was conducted or an inspection certificate was issued. Although businesses and multifamily dwellings may constitute a large segment of the City's property owners, the fee assessment was not blanket-billed or imposed on residents who did not obtain a fire inspection certificate. Accordingly, this factor favors the City.

3. *Is the amount of the fee to be paid affected by the level of goods or services provided to the fee payer?* Fees subject to the Hancock Amendment are less likely to be dependent on the level of goods or services provided to the fee payer while fees not subject to the Hancock Amendment are likely to be dependent on the level of goods or services provided to the fee payer.

 The circuit court determined that this third factor favored the Plaintiffs because the fire inspection certificate fee was not based on the level of service provided but on the size of the property. We agree to the extent that the level of ser-

vice provided was not a component of the sliding fee scale. The fee schedule was based on the square footage of the property inspected, but the fees were capped at $100.[1] Thus, even though more inspection time would be required for larger properties, no additional fees were assessed.[2] "In order for a government charge to appear to be a user fee under *Keller's* third criteria, the charge imposed must bear a *direct* relationship to the level of services a 'fee payer' actually receives from the political subdivision." *Beatty*, 867 S.W.2d at 221. Because the fees at issue here do not directly relate to the level of the inspection service provided, they are likely subject to the Hancock Amendment.

4. *Is the government providing a service or good?* If the government is providing a good or a service, or permission to use government property, the fee is less likely to be subject to the Hancock Amendment. If there is no good or service being provided, or someone unconnected with the government is providing the good or service, then any charge required by and paid to a local government is probably subject to the Hancock Amendment.

The circuit court determined that this factor favored the Plaintiffs because the City did not provide fire inspections as a service to businesses and multifamily dwellings, but rather as a means to enforce the fire code. We agree the court properly applied this third Keller factor based on the facts in the record.

---

1. All three of the ordinances included the following fee schedule:

| Total Gross Square Feet | Inspection Fee |
| --- | --- |
| Up to 999 | $ 20.00 |
| 1,000 to 2,499 | 30.00 |
| 2,500 to 7,999 | 50.00 |
| 8,000 to 11,999 | 60.00 |
| 12,000 to 49,000 | 80.00 |
| 50,000 and up | 100.00 |

2. For example, the inspection certificate fees would be the same, $100, for properties as diverse as DST's three-story, 60,000 square foot office building on Quality Hill, and Shook, Hardy & Bacon's twenty-four story, 682,000 square foot office building at Crown Center.

At trial, Richard Dyer, the Kansas City Fire Chief, testified that the Fire Department conducts inspections of commercial properties to determine compliance with the international fire code. Prior to the three ordinances, the fire inspection program was primarily on a complaint-based system and the inspections were funded by general revenues. If the inspection revealed fire code violations, the property owner would have an opportunity to cure the deficiency. The Fire Department had authority to issue a municipal citation if the violation was not corrected. The inspection program was part of the prosecution and enforcement of "quasicriminal" violations that are exclusively a governmental function. *See Avanti*, 974 S.W.2d at 511.

This history of the fire inspection program indicates the City was not delivering a good or service when it took steps to enforce the fire code. With the passage of the three ordinances, the City sought to convert this enforcement activity into a service by requiring annual inspections and charging a fee for an inspection certificate. These revenue-driven policy changes did not alter the fundamental purpose of the inspection program and the nature of the City's duty to ensure compliance with the fire code. Because the inspection program does not constitute a service to property owners, the fees related thereto are likely a violation of the Hancock Amendment.

5. *Has the activity historically and exclusively been provided by the government?* If the government has historically and exclusively provided the good, service, permission, or activity, the fee is likely subject to the Hancock Amendment. If the government has not historically provided the good, service, permission or activity, then any charge is probably not subject to the Hancock Amendment.

The circuit court found this factor clearly weighed in favor of proving a violation of the Hancock Amendment. There is no dispute that the City's Fire Department conducted inspections for nearly seventy-five years as a means of enforcing the fire code. The City concedes, as it must, that the activity for which it now seeks to charge a fee has been historically and exclusively provided by the municipal government.

Four of the five *Keller* factors weigh in favor of finding a violation of the Hancock Amendment. Accordingly, the circuit court did not err in invalidating the three ordinances based on this constitutional infraction.

### Attorney's Fees on Appeal

Attorney's fees were awarded to Plaintiffs below pursuant to Section 23 of the Hancock Amendment. Before submission of this case on appeal, Plaintiffs filed a motion with this court for attorney's fees on appeal, which was taken with the case.[3]

Refusing to compensate an attorney for the time reasonably spent on appellate work defending the judgment below would be inconsistent with the intent of the legislature, which provided for recovery of fees under Hancock. *Williams v. Fin. Plaza, Inc.*, 78 S.W.3d 175, 188 (Mo.App.2002). Plaintiffs' request for fees is, therefore, granted. The cause is remanded to the

---

**3.** Western District Court of Appeals Special Rule XXIX provides in relevant part:

Any party claiming an amount due for attorney's fees on appeal pursuant to contract, statute or otherwise and which this Court has jurisdiction to consider, must file a written request before submission of the case.

trial court for an award of reasonable attorney's fees on appeal.

CONCLUSION

We affirm the circuit court's judgment. The cause is remanded for a determination of reasonable attorney's fees on appeal.

All concur.