CITY OF SULLIVAN, A Missouri Municipal Corporation in Franklin and Crawford Counties, Respondent,

v.

Judith Ann SITES, as Trustee of the Judith Ann Sites Trust, Appellant.

No. SC 90866.

Supreme Court of Missouri, En Banc.

Dec. 7, 2010.

Rehearing Denied Jan. 11, 2011.

Jonathan Sternberg, Sternberg Law PC, Dennis Owens, Attorney at Law, Kansas City, for Sites.

Kevin M. O'Keefe, Stephanie E. Karr, Curtis, Heinz, Garrett & O'Keefe PC, St. Louis, Matthew A. Schroeder, Hansen, Stierberger, Downard, Melenbrink & Schroeder LLC, Union, for the City.

Howard C. Wright Jr., Attorney at Law, Springfield, for the Missouri Municipal League, which filed a brief as a friend of the Court.

MARY R. RUSSELL, Judge.

At issue in this case is whether the City of Sullivan can charge higher sewer connection fees for properties in areas with new sewer access. A property owner argues that the City's sewer connection fee ordinance is a "special law" in violation of Missouri Constitution article III, section 40(30).

Because the sewer connection fee ordinance is a not an unconstitutional special law under article III, section 40(30), the trial court's judgment upholding the ordinance is affirmed.[1]

## Background

In 1996, the City developed a plan to improve its sewer system and install new sewer lines in areas that previously had no sewer access. Pursuant to Missouri Constitution article VI, section 27, the City proposed a $3.3 million revenue bond to fund the sewer project. Before the election, voters were provided notice by mail about the sewer improvement project, which detailed the new areas that would receive sewer service and the connection fees that would be imposed in those areas. The City's voters passed the proposed bond issue. The bonds issued were special, limited obligations of the City, secured by and payable solely from a pledge of the net revenues gained from the operation of the City's combined sewer system and waterworks.

An ordinance outlining new sewer connection fees was included in the City's efforts to implement the sewer improvement project. The ordinance established higher sewer connection fees for properties located in areas that did not have sewer service prior to the 1996 sewer improvement project. Sewer connection fees for these properties were set at $3,750 or $4,250,[2] whereas sewer connection fees in

---

1. This Court has jurisdiction over this case pursuant to Mo. Const. art. V, sec. 10, as this case was taken on transfer after opinion by the court of appeals.

2. Sewer connection fees vary by the type of connection used—fees are $3,750 for a gravity connection or $4,250 for a pressure (grinder pump) connection.

previously sewered areas were set at $60 or $75.[3]

The Judith Ann Sites Trust, administered by Judith Ann Sites as trustee, owns property located in an area that previously did not have sewer access. The City's new sewer lines were constructed within 100 feet of Sites's property, requiring her to connect her property to the sewer system.[4] Sites refused to pay the costs for connecting to the City's sewer system, which included the City's sewer connection fee and the construction costs for a sewer line leading from her home to the City's sewer line. The City sued Sites, seeking an order compelling her to pay the necessary costs for a sewer connection.

Sites answered by arguing that the City's sewer connection fee ordinance is a "special law" that violates Missouri Constitution article III, section 40(30). She asserted that the ordinance wrongly created an improper subclass within the larger class of "all new sewer connections" by treating disparately sewer connections for properties located in newly sewered areas. She argued that it was unjustifiable to charge higher sewer connection fees to these properties because all new sewer connections, regardless of their location in the City, utilize comparable materials and yield the same permission to connect to the City's sewer service.

The City moved that Sites's answer be stricken because the City's sewer connection fee ordinance had withstood a previous challenge in *Larson v. City of Sullivan*, 92 S.W.3d 128 (Mo.App. 2002). *Larson*, however, did not address a special laws challenge to the sewer connection fee ordinance. Instead, *Larson* determined that the ordinance did not violate the Hancock Amendment, Missouri Constitution article X, section 22. 92 S.W.3d at 131–33. *Larson* further concluded that the City had the authority to establish the connection fees and that the connection fees imposed by the City were not unreasonable, arbitrary, or capricious. *Id.* at 133–35. The trial court overruled the City's motion to strike Sites's answer.

Ultimately, however, the trial court entered a judgment in the City's favor. Sites was ordered to pay the costs for connecting her home to the City's sewer system, and the City was granted an order permitting it to enter her property to connect it to the sewer system. The City also was awarded $3,750 in damages, the amount of Sites's connection fee. Sites now appeals.

## Standard of Review

■■■ Sites's appeal maintains that the sewer connection fee ordinance is unconstitutional under article III, section 40(30). The constitutional validity of the ordinance is a question of law meriting *de novo* review. *State ex rel. Sunshine Enters. of Mo., Inc. v. Bd. of Adjustment of the City of St. Ann*, 64 S.W.3d 310, 314 (Mo. banc 2002). Lawmakers' discretion in defining a class to which a law applies should be disturbed only when the created class is clearly arbitrary, unreasonable, and unjust. *See Hawkins v. Smith*, 242 Mo. 688, 147 S.W. 1042, 1044 (1912).

---

3. The connection fee was $60 for a four-inch sewer tap or $75 for a sewer tap in excess of four inches. These connection fees later were raised to $500.

4. The City's code requires that "[t]he owner of all houses, buildings or properties used for human employment, recreation or other purposes" with property lines within 100 feet of the City's sewer system must install toilet facilities connected to the City's sewer system. Sewer connections are not required for vacant lots.

### The Sewer Connection Fee Ordinance Is Constitutional

Article III, section 40(30) provides that "[t]he general assembly shall not pass any local or special law . . . where a general law can be made applicable." This prohibition against special laws also extends to city ordinances. *McKaig v. Kansas City*, 363 Mo. 1033, 256 S.W.2d 815, 816 (1953). A general law is a statute that relates to persons or things as a class, whereas a special law relates to particular persons or things of a class. *City of Springfield v. Sprint Spectrum, L.P.*, 203 S.W.3d 177, 184 (Mo. banc 2006).

Consideration for whether a law is special or general includes examination of whether the categories created under the law are open-ended or fixed, based on an immutable characteristic. *Id.* But whether a law implicates a geographically fixed category is not the dispositive factor in deciding if it is an unconstitutional special law. The class at issue in the sewer connection fee ordinance is fixed according to location, but this does not render the ordinance unconstitutional unless there is was no substantial justification for creating the class. *See id.* at 185–86.

Where the designation of a class is substantially justified, the class avoids the "vice in special laws" referenced in *Sprint Spectrum:* "The vice in special laws is that they do not embrace all of the class to which they are naturally related." *Id.* at 184 (internal quotations omitted). "The question in every case is whether any appropriate object is excluded to which the law, but for its limitations, would apply." *Id.* (internal quotations omitted).

The record in this case provides evidence that there was substantial justification for creating a class of new sewer connections that was required to pay higher connection fees before accessing new portions of the City's sewer system. The higher connection fees were imposed in a way that embraced all of the class to which the higher fees naturally related. *Larson* noted that the properties subjected to the higher connection fees derived a direct benefit from the City's 1996 sewer improvements: "The system itself is a good or service, which is provided in return for the fee. Residents did not have the benefit of a sewer system prior to this. In return for the payment of the fee, residents now have the benefit of the system." 92 S.W.3d at 133.

Other jurisdictions recognize that special laws prohibitions should not prevent necessary geographic classifications premised on legitimate distinguishing characteristics. *See, e.g., Schrader v. Florida Keys Aqueduct Auth.*, 840 So.2d 1050, 1055–56 (Fla. 2003) (discussing that some laws necessarily apply only to fixed geographic classifications). The Florida Supreme Court recognizes that "[a] law relating to . . . things as a class is a valid general law if the classification is based upon *proper differences which are inherent in or peculiar to the class.*" *Id.* at 1055 (emphasis added). It highlights the importance of considering the public policy implications of the classification at issue:

> So long as a law materially affects the people of this state, it need not have universal application to be a general law. . . . This Court has upheld as legally valid general laws legislation that facially appeared to affect only a limited geographic area of the state but which had a primary purpose contemplating an important and necessary state function and an actual impact far exceeding the limited geographic area identified by its terms.

*Id.* at 1055–56.

The creation of the class in this case contemplated an important government

function. The class's impact extended beyond the geographic bounds of the properties in the class. The sewer connection fee ordinance was an important component of the City's overall efforts to implement its sewer improvement project, which extended sanitary sewer services to more households and provided needed improvements to the City's sewer infrastructure.

The imposition of higher fees for the properties connecting to the new portions of the City's sewer system contributed to the City's ability to fund the sewer project as a whole. The City's code administrator testified at trial that the connection fees were included in the overall costs of the new sewer system. He stated that it was his assumption that establishing the fee amounts "was done through the cost of the project" after determination of "what it would take to pay for the project, [including] pay[ing] the bonds off." He concurred with the City's attorney's statement that the City had to "spread [the] cost" for the new sewer system across the properties that were receiving new sewer access.

Considering the facts of this case, the City was justified in creating the class of new sewer connections charged higher connection fees. The trial court did not err in finding for the City in its suit against Sites. The trial court's judgment is affirmed.

All concur.