LACLEDE POWER & LIGHT COMPANY, a Corporation, v. THE CITY OF ST. LOUIS, a Municipal Corporation, Appellant.—No. 38116.— 182 S. W. (2d) 70.

Court en Banc, July 3, 1944.

Rehearing Denied, September 5, 1944.

68

*Joseph F. Holland,* City. Counselor, and *Oliver Senti,* Associate City Counselor, for appellant.

70

*Jones, Hocker, Gladney & Grand, Lon O. Hocker, Joseph H. Grand* and *Vincent L. Boisaubin* for respondent.

*William G. Marbury amicus curiae.*

■ HYDE, J.—This is an action for a declaratory judgment to determine the validity of Ordinance No. 41572 of the City of St. Louis. Plaintiff seeks to have this ordinance declared invalid and to obtain a permanent injunction against its enforcement. The plaintiff prevailed in the circuit court and the city has appealed.

An opinion, reversing the trial court's decree was adopted in Division 2 at the May Term 1943 and En Banc at the September Term 1943. Thereafter a rehearing was granted and the cause was re-argued at the present term. We adopt the statement of facts and issues from the Divisional opinion, by Barrett, C., as follows:

"The history and factual situation of the controversy is this:

"In 1857 the State of Missouri, through its General Assembly, granted the Laclede Gas Light Company a perpetual franchise to use the streets of the City of St. Louis (within the corporate limits as defined in 1839), for the purpose of conducting its business. Laws Mo. 1856-57, pp. 598-600; Laws Mo. 1868, p. 187. Under the terms of an instrument executed in 1926 the Laclede Power & Light Company, the plaintiff, is the successor to these franchise rights, as well as the franchise rights of the Phoenix Light, Heat & Power Company, and since that time has been supplying electric power to certain areas of the city.

"The Union Electric Company, (which counsel states is the only competitor of Laclede Power & Light Company), was organized in 1884 and obtained its franchise from the City of St. Louis and in so doing accepted and agreed to comply with Sections 2113 and 2123 of what is now the 1936 Code of the City of St. Louis. It may be added here that the plaintiff and its predecessor, Phoenix Light, Heat & Power Company, comply with those ordinances in so far as power is furnished in the so-called "underground" section of the city. Those ordinances were enacted in 1884 and provided, in substance, that a power franchise would not be granted unless the company seeking the franchise accepted the ordinances and semi-annually paid the city five percent of its gross receipts. So, since that time the Union Electric Company and that part of the plaintiff's business transacted as a successor to Phoenix Light, Heat and Power Company have paid and are now paying the City of St. Louis five percent of their gross receipts.

"But the plaintiff and its predecessor, Laclede Gas Light Company, have never accepted nor complied with the terms of these ordinances and have never paid five percent of their gross receipts from business in the chartered area, though the city has attempted to compel them to do so. Because the Laclede Gas Light Company's perpetual charter was obtained from the state in 1857 and prior to the enactment of

these ordinances and because it had never accepted them and was not compellable to do so because the five percent provided in them has been held to be contractual and a rental for a franchise and not a license tax the company and its predecessor has been held not liable for such sums under those ordinances. City of St. Louis v. Laclede Gas Light Co., 155 Mo. 1, 55 S. W. 1003; City of St. Louis v. Laclede Power & Light Co., 347 Mo. 1066, 152 S. W. (2d) 23.

"While the latter cause was pending and in May 1939 the city enacted the ordinance in question, No. 41572, and the pertinent and questioned sections are as follows:

" 'Section Two.—Every person now or hereafter engaged in *the business of supplying electricity* for compensation for any purpose in the City of St. Louis *shall pay* to the City of St. Louis *as a license tax a sum equal to five percent of the gross receipts from such business.*

" 'Section Five.—*The tax in this ordinance provided shall not apply to any person*, or successor thereto or assignee thereof, *who has heretofore accepted* ordinance twelve thousand seven hundred twenty-three and ordinance eighteen thousand six hundred eighty, or either of said ordinances, *and has complied with the terms and provisions of Sections 2113 and 2123* of the Revised Code of St. Louis, 1936, *and who shall make the payments therein required on the gross receipts* from supplying electricity both within and outside of ▮ the underground district of the City of St. Louis.' "

"Under these circumstances the respondent contends that the ordinance (No. 41572) violates Missouri constitutional restrictions and is therefore void as to it. The chief objection to the ordinance is that it violates Section 3, Article X of the Constitution of Missouri in that it provides for a license tax which does not bear equally and uniformly upon all persons engaged in the same class of business and by its exemptions makes an unreasonable, discriminatory, arbitrary and unfair classification of persons engaged in the same business. It is argued that the ordinance violates Sections 4 and 30 of Article II and Section 53 of Article IV of the Missouri Constitution in that it deprives the respondent of its property without due process of law and is, in fact, a prohibited special law or act. Furthermore, it is argued that the ordinance impairs the obligation of contract."

▮ Section 53 of Article 4 provides: "The General Assembly shall not pass any local or special law": (Specifying 33 items, of which plaintiff points to item 26 and the general provision in item 32.) ". . . 26. Granting to any corporation, association or individual any special or exclusive right, privilege or immunity, . . . 32. . . . In all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject." We pointed out,

in City of Springfield v. Smith, 322 Mo. 1129, 19 S. W. (2d) 1, that there are only "three other states, viz., Minnesota, Kansas, Michigan, which have constitutional provisions expressly making the determination of the question of whether a general law can be made applicable a *judicial question.*" As also pointed out in that case "the above constitutional inhibition applies to city ordinances as well as state laws."

In Reals v. Courson, 349 Mo. 1193, 164 S. W. (2d) 306, we stated the definition and tests of a special law thus: "A statute which relates to persons or things as a class, is a general law, while a statute which relates to particular persons or things of a class is special . . ."

" 'The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes, that makes it special, but what it excludes.' . . . "

"If in fact the act is by its terms or 'in its practical operation, it can only apply to particular persons or things of a class, then it will be a special or local law, however carefully its character may be concealed by form of words.' "

In Reals v. Courson, the questioned act was held an invalid special act because it applied "to an existing state of facts only, that is to the one county in Missouri then falling within the classification". It is plaintiff's contention that the italicized portions of Section 5, of the ordinance herein challenged, make it impossible for it or anyone else to ever be in or come into the exempted class set up therein and also that Union is specially favored by being given a fixed limit of a five percent payment to the city while any future competitors would be required to pay ten percent. (Both the five percent street rental and the five percent license tax.) In other words, plaintiff contends that Union is the only one which is or ever can be exempted from paying the license tax, under this ordinance.

The City says: "If the Union fails to make the payment provided for in Section 2123, it immediately falls out of the exempted class and into the same class as the Laclede; that is, the class on which the tax is imposed. Any other company which the City might authorize to use its streets for the purposes described in Section One, might fall into either class depending on the condition on which its privileges were granted." The City further says: "The purpose of the ordinance was to increase revenue of the city and in doing so to require all persons engaged in the distribution of electricity to contribute the same amount to its revenue. It is obvious that it was the legislative intent to require all persons so engaged to contribute 5 per cent of their gross receipts to the support of the city government. If necessary to carry out that intent, the word 'and' following the figures '1936' and preceding the word 'who' in Section 5 of the

ordinance will be read as 'or'. It is a well-settled rule that laws will be so construed as to make them constitutional if possible." ..

The City further says that plaintiff cannot raise the question of violation of ▮▮ Section 53, Article 4 because its petition did not invoke that section. However, the petition did state that this was "a special ordinance, applicable only to plaintiff, under the guise of a general ordinance." Furthermore, the petition did invoke Section 3, Article 10 which provides that "all taxes shall be levied and collected by general laws." We, therefore, hold that the question of violation of Section 53, Article 4 may now properly be considered.

▪ ▮▮ It seems to us that this ordinance puts Union in a fixed class (which does not have to pay the five percent license tax imposed by Section 1) into which neither plaintiff nor anyone else could ever come, because this class was limited to one "who has *heretofore* accepted ordinance 12723", or 18680 or either of them, *"and has complied with"* Section 2113 and 2123, Revised Code of 1936 *"and* who shall make the payments therein required." Undoubtedly this says and means that the exemption from the license tax applied only to one who met all three conditions, namely: (1) had accepted one of the specified ordinances prior to the adoption of this new ordinance; (2) had complied with the specified sections of the City Code prior to the adoption of this new ordinance; (3) and *thereafter* continued to make the payments (for street rental) which it had previously agreed to make and had made up to the adoption of this new ordinance. This described Union specifically and completely because that was its situation. It also just as completely and specifically prohibited plaintiff or any future competitors from getting into this class.

It is true that Union could get out of this exempt class by ceasing to make the payments (although it was not likely to do so because its payments were semi-annual while the license tax payments were quarterly and there were other probable advantages); but it was the only one in the business to be taxed which had such an option. Moreover, and more important, plaintiff could not get into Union's class and, likewise, no new competitors could ever do so either. This is true because neither plaintiff nor any new competitor could comply with conditions 1 and 2. Furthermore, under the literal meaning of this ordinance, no new competitor could get a franchise without paying the five percent rental (unless the City repealed existing ordinances) and, therefore, because it could not meet the terms for exemption in Section 5 would have to pay the five percent license tax also. It is no answer to say that the city might, in the future, grant more lenient franchise terms because the validity of this ordinance must be ruled on what it provides with reference to existing laws. To follow the City's suggestion of making the word "and" (before condition 3) read "or" would do violence to the meaning of this Section. It then would, if literally applied, exempt Union from the

license tax regardless of whether or not it continued to make the rental payments. It would also exempt new firms, while making the payments, even if they never accepted the ordinances. Clearly that was not the legislative intent.

Our conclusion is that the ordinance offends against the rule stated in Reals v. Courson, supra, and authorities therein cited, by excluding plaintiff, and all others who might hereafter engage in the same business, from ever coming into the class in which Union is placed by this ordinance. Thus Union is and always would be the company exempted from the license tax (unless it voluntarily decides it does not wish to be) and no one else could ever obtain such exemption under this ordinance. (It may also cover the business of Phoenix operated by plaintiff but it would nevertheless be a special law if the exempt class is permanently limited to two instead of one.) We, therefore, hold that this makes this ordinance a prohibited special law and that it is invalid under the provisions of Section 53, Article 4. It is unnecessary to pass on the other questions raised.

The judgment is affirmed. All concur.