CITY OF SPRINGFIELD, Appellant,

v.

SPRINT SPECTRUM,
L.P., Respondent.

No. SC 87238.

Supreme Court of Missouri,
En Banc.

Aug. 8, 2006.

John W. Housley, Angela K. Drake, Nicole D. Lindsey, Nancy K. Yendes, Office of the City Attorney, Springfield, for appellant.

Stephen R. Clark, Kristin E. Weinberg, St. Louis, Randy R. Cowherd, David R. Adaris, Springfield, for respondent.

Robert L. King, St. Louis, for amicus curiae National Association for Consumer Advocates and The Foundation for Taxpayer and Consumer Rights, National League of Cities, The International Municipal Lawyers Association, The National Association of Telecommunications Officers and Advisors, Citizens for Tax Justice, and Missouri Chapter of The National Association of Telecommunications Officers and Advisors.

Erwin O. Switzer, III, St. Louis, for amicus curiae National Conference of State Legislators.

STITH, Judge.

The City of Springfield ("City") appeals the trial court's dismissal of its suit alleging that the "Municipal Telecommunications Business License Tax Simplification Act" ("Act"), codified at 92.074 to 92.095, RSMo Supp.2005,[1] is unconstitutional in the manner in which it regulates and prohibits collection by municipalities of business license taxes on telecommunication companies for wireless service already provided by those companies before the law was enacted.

This Court agrees that section 92.086.10 violates the Missouri Constitution's prohibition on special laws. It creates a fixed category of cities that are exempt from specified taxation restrictions placed on all other cities. It bases the exemption on an immutable, historical fact—whether a city had adopted and enforced its tax prior to

---

1. All statutory citations are to RSMo Supp. 2005, unless otherwise specified.

January 15, 2005—and substantial justification for failure to enact a general law in lieu of a special law has not been shown. Because section 92.092 expresses the legislature's intent that if "any provision or part of sections 92.074 to 92.089" is invalid, all of those sections of the Act must fall, sections 92.074 to 92.089 are invalid in their entirety.

## I. FACTUAL AND PROCEDURAL BACKGROUND

For decades the City has imposed a gross receipts business license tax on providers of "telephone and telephonic service" in the City. Originally enacted in 1968,[2] the tax is imposed pursuant to the City ordinance that states:

> Every person engaged in the business of supplying telephones, and telecommunications and telephonic service, and telecommunications services, within the city shall pay as a license tax a sum equal to six percent of the gross receipts from such business.

City of Springfield, Code, sec. 20–146.

The City claims Sprint Spectrum, L.P. ("Sprint"), has not paid most of the gross receipt taxes, interest and penalties required under the ordinance. Seeking to enforce the application of its tax to the wireless telephone service Sprint had already supplied to its customers, the City filed suit against Sprint in late 2004. Sprint defended that the tax did not apply to its wireless service because wireless service is not telephone service.

The City's claims and Sprint's defenses are not unique. Similar suits were filed by other Missouri cities against Sprint and other wireless and land line service providers during that same period. Three such suits are the subject of companion cases decided this day involving nearly identical claims and defenses.[3]

During the course of and perhaps in response to this litigation, the legislature passed H.B. 209, which went into effect August 28, 2005.[4] Of primary importance here, the bill enacted sections 92.074 to 92.095, relating to imposition of business license taxes levied by Missouri municipalities.[5] Sprint moved to dismiss, arguing that the Act prohibited suits for collection of unpaid business license taxes on wireless telephone service unless a city sought to enforce such a tax and met certain other

---

**2.** The 1968 ordinance stated, "Every person engaged in the business of supplying telephone and telephonic service within the City shall pay as a license tax a sum equal to 6% of the gross receipts from such business." This Court does not address the issue raised by Sprint concerning, whether the change in the ordinance language should have been authorized by public vote, as that issue is not necessary to the determination of this appeal.

**3.** The related cases, which were consolidated for the purpose of oral argument, are: *City of Wellston, Missouri & City of Winchester, Missouri v. SBC Commc'ns Inc., et al.*, 203 S.W.3d 189, 2006 WL 2257024 (Mo. banc 2006); *City of University City, Missouri, et al. v. AT & T Wireless Servs. Inc., et al.*, 203 S.W.3d 197, 2006 WL 2257066 (Mo. banc 2006); *City of St. Louis v. Sprint Spectrum, L.P.*, 203 S.W.3d 199, 2006 WL 2256882 (Mo. banc 2006).

**4.** H.B. 209, 93rd Gen. Assem., 1st Reg. Sess. (Mo.2005); 2005 Mo. Laws 429.

**5.** While the majority of the relevant provisions modified in H.B. 209 are codified in sections 92.074 to 92.095, H.B. 209 also enacted section 71.675, which prospectively prohibits cities and towns from filing class action suits against telecommunications companies to recover business license taxes. 2005 Mo. Laws 430. H.B. 209 also included modifications to sections 227.241 to 227.249, the "State Highway Utility Relocation Act," setting out rules for relocating utilities along highways. 2005 Mo. Laws 435.

requirements prior to January 15, 2005, a requirement the City did not meet.

On its face, the Act prohibits all but a few municipalities from enforcing their business license taxes for wireless service provided by telecommunications companies prior to July 1, 2006, requires them to dismiss suits that have been filed to collect such taxes, and prohibits them from suing for such taxes prior to July 1, 2006, while giving immunity from suit for such taxes to any telecommunications company that acted in subjective good faith in failing to pay these taxes prior to July 1, 2006. Sec. 92.089.

Specifically, section 92.080 limits the right of a municipality to impose a business license tax after August 28, 2005, except as permitted by the Act itself. Beginning July 1, 2006, the director of revenue shall promulgate regulations for municipalities' collection of business license taxes on telecommunications companies and shall collect such taxes for those municipalities that comply with these regulatory procedures. Sec. 92.086. "Pass through" of the business license tax to the consumer is authorized. Sec. 92.086.13.

Business license taxes for periods after July 1, 2006, are permitted by the Act if certain conditions are met, but are subject to a 5 percent cap on gross receipt taxation. Sec. 92.086.9. The legislature also attempted to address compliance with the Hancock Amendment, Mo. Const., art. X, sec. 22 ("Hancock"),[6] mandating certain anticipated necessary adjustments, responding in particular to expected issues with basing the Act's new approved taxation on gross receipts. Sec. 92.086.6.

Most importantly here, this 5 percent cap on municipal business license taxes specifically is *not* made applicable to all Missouri cities and towns. To the contrary, section 92.086.10 creates a special rule for any municipality that "specifically included the words 'wireless,' 'cell phones,' or 'mobile phones' in its business license tax ordinance" prior to November 4, 1980, the date Hancock took effect, as well as for any municipality that included such language after that date if its ordinance was authorized or amended by a public vote. Such a municipality could continue to impose the tax previously approved without being limited by the provisions of either section 92.086.6 or 92.086.9 if it also took "affirmative action to collect such tax from wireless telecommunications providers prior to January 15, 2005...." Sec. 92.086.10(1), (2). Otherwise, except in rare circumstances, municipalities are all required to limit their future business license taxes to 5 percent of gross receipts as defined in the Act, even if their ordinances also comply with Hancock.[7]

The reason for these enactments is set out in section 92.089, which states that the legislature "finds and declares" that litigation filed by municipalities to collect taxes due under pre-existing municipal ordinances "is detrimental to the economic well being of the state"; that the legislature believes such debts to be unliquidated; that the legislature adopts the Act as a

---

**6.** The Hancock Amendment, effective November 4, 1980, prohibits political subdivisions from imposing new taxes, licenses or fees, without first receiving approval through a vote of the people. Mo. Const. art. X, sec. 22. This includes increases to existing lawful taxes, licenses and fees. *Id.* Taxes, licenses and fees "authorized by law, charter or self-enforcing provisions" of the Missouri Constitution, in effect at the time of the amendment, do not require approval by a vote of the people. *Id.*

**7.** *See* sec. 92.086.9. "Gross receipts" are defined as receipts from the retail sale of telecommunications service taxable under section 144.020 and receipts otherwise exempt from state sales tax. Sec. 92.083.1(1).

means of compromising uncertain litigation for the municipalities; and that the promise of permission to impose up to a 5 percent tax in the future is legislatively determined to be "full and adequate consideration" as the term "consideration" is used in article III, section 39(5) of the Missouri Constitution. Sec. 92.089.1.

At the time these provisions went into effect, this lawsuit was pending. Sprint filed a motion to dismiss in light of the new Act. The trial court agreed and dismissed the suit with prejudice. In so doing, it declared that H.B. 209 was constitutional, that as a result of its passage the City's suit was required to be dismissed "without further showing" and that Sprint was immune from past tax liability. The City appeals, claiming H.B. 209, as codified, is unconstitutional for multiple reasons.[8] Jurisdiction is in this Court, which has "exclusive appellate jurisdiction in all cases involving the validity ... of a statute or provision of the constitution of this state...." Mo. Const. art. V, sec. 3.

## II. STANDARD OF REVIEW

■■■ "Construction of a statute is a question of law." *Delta Air Lines v. Dir. of Revenue*, 908 S.W.2d 353, 355 (Mo. banc 1995). This Court reviews issues of law *de novo*. *Barker v. Barker*, 98 S.W.3d 532, 534 (Mo. banc 2003). "A statute is presumed to be constitutional," *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822,

828 (Mo. banc 1991), and "should be enforced by the courts unless it plainly and palpably affronts fundamental law embodied in the constitution." *Id.* "Regardless of legislative intent, it should be obvious that a statute cannot supercede a constitutional provision." *Doe v. Roman Catholic Diocese*, 862 S.W.2d 338, 341 (Mo. banc 1993). Further, if a law constitutes a "special law" under article III, section 40(30) of the Missouri Constitution because it applies to a fixed subclass, then it will be invalidated unless substantial justification is shown for utilization of a special rather than a general law. *Harris v. Missouri Gaming Comm'n*, 869 S.W.2d 58, 65 (Mo. banc 1994).

## III. ANALYSIS

Although the City notes numerous constitutional deficiencies in the Act, this Court focuses on its allegation that section 92.086.10 is an invalid "special law" that, by creating an impermissible fixed class, exempts certain cities from its provisions in violation of article III, section 40(30) of the Missouri Constitution. Because this Court agrees that sec. 92.086.10 is an invalid special law for this reason and because section 92.092 provides that if any one of sections 92.074 to 92.089 of the Act is declared invalid all of those sections fail, this Court need not address the other grounds on which the City alleges that the Act is a special law[9] or its arguments as to

8. The parties principally refer to the law as H.B. 209, although technically the City does not attack passage of the Act, but rather particular provisions of it. This Court therefore refers to particular provisions of the Act as codified rather than to "H.B. 209," which is the designation until codified.

9. The City also alleges the Act is a special law because: (1) it grants special rights, privileges and immunities to telecommunications companies and to no other utilities and grants immunity to those telecommunications companies that failed to pay taxes prior to July 1, 2006, and not to those companies that did pay; (2) it is arbitrary and unreasonable in that it prohibits only cities and towns from filing class action lawsuits against telecommunications companies and shields only those companies from such lawsuits and not other companies; and (3) its purported purpose of protecting the economic well-being of the state is disingenuous in that it authorizes telecommunications companies to "pass through" the taxes to consumers and shortens the statute of limitations.

the unconstitutionality of other provisions of the Act.[10]

*A. Is Section 92.086.10 a Special Law?*

Missouri's Constitution specifically provides:

The general assembly shall not pass any local or special law:

. . .

(30) where a general law can be made applicable, and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject.

Mo. Const. art. III, sec. 40(30). Section 92.086.10 states in relevant part:

(1) Any municipality which prior to November 4, 1980, had an ordinance imposing a business license tax on telecommunications companies which specifically included the words 'wireless', 'cell phones', or 'mobile phones' in its business license tax ordinance as revenues upon which a business license tax could be imposed, and had not limited its tax to local exchange telephone service or landlines, *and had taken affirmative action to collect such tax from wireless telecommunications providers prior to January 15, 2005,* shall not be required to adjust its business license tax rate as provided in subsection 6 of this section and shall not be subject to the provisions of subsection 9 of this section.

(2) Any municipality which has an ordinance or an amendment to an ordinance imposing a business license tax on telecommunications companies which was authorized or amended by a public vote subsequent to November 4, 1980, and such authorization specifically included the terms 'wireless', 'cell phones', or 'mobile phones' as revenues upon which a business license tax could be imposed, and had not limited its tax to local exchange telephone service or landlines, *and had taken affirmative action to collect such tax from wireless telecommunications providers prior to January 15, 2005,* shall not be required to adjust its business license tax rate as

---

**10.** In particular, the City claims the Act's provisions violate: (1) article III, section 38(a), which prohibits the grant of public money to a private entity, in that it cancels a tax debt allegedly owed by telecommunications companies to municipalities and allows those companies to retain that money; (2) article III, section 39(5), which prohibits extinguishing corporate debt without consideration, in that it gratuitously extinguishes a corporate debt due the municipality and the alleged consideration wilts under legal scrutiny; (3) article I, section 13, which prohibits laws retrospective in operation, in that it purports to affect transactions that occurred prior to the Act's effective date and to the substantial prejudice of the City by re-characterizing past due taxes, creating retroactive immunity, and requiring dismissal of City suits seeking to collect past taxes; (4) article X, section 3, which requires that taxes be imposed uniformly, by offering immunity only to telecommunications companies that have not paid past taxes; and (5) article II, section

I, which enforces the separation of powers, in that it impermissibly encroaches upon the judiciary by mandating the dismissal of lawsuits and more, and that it also impermissibly interferes with the executive branch by impeding tax collection.

The City further maintains that: (6) Sprint was unable to establish as a matter of law that it met the "good faith" requirements of section 92.089.2; and (7) the Act violates the equal protection provision of the Missouri Constitution, art. I, sec. 2, by only affording immunity to telecommunications companies that did not pay the past taxes. Finally, the City argues: (8) because H.B. 209 included not only the Act, but also provisions adopting section 71.675, which prospectively prohibits class action lawsuits by municipalities against telecommunication companies, and provisions amending chapter 227 regarding relocation of telecommunication utility property on highways, it violated the single subject and clear title requirements of Mo. Const. art. III, sec. 23.

provided in subsection 6 of this section and shall not be subject to the provisions of subsection 9 of this section.

Sec. 92.086.10 (emphasis added).

■ The question for this Court is: does the exception set out in this statute for those cities that enforced a wireless telephone service ordinance prior to January 15, 2005, constitute a "special law" under the Missouri Constitution, art. III sec. 40(30), and, if so, has Sprint met its burden of showing a substantial justification for adoption of this law rather than a generally applicable law.

■ This Court has long recognized that a general law is a "statute which relates to persons or things as a class." *Reals v. Courson*, 349 Mo. 1193, 164 S.W.2d 306, 307 (1942), *quoting, Wheeler v. Philadelphia*, 77 Pa. 338, 348 (Pa.1875). By contrast, "a statute which relates to *particular persons or things* of a class is special." *Id.* at 307–08, *quoting Wheeler*, 77 Pa. at 338 (emphasis added). "The vice in special laws is that they do not embrace all of the class to which they are naturally related." *Id.* at 308. Thus, "the question in every case is whether any appropriate object is excluded to which the law, but for its limitations, would apply." *State ex rel. Barrett v. Hedrick*, 294 Mo. 21, 241 S.W. 402, 407 (1922), *quoting, State ex rel. Budd v. Hancock*, 66 N.J.L. 133, 48 A. 1023, 1024 (1901).

■ When dealing with laws regarding taxation or powers of political subdivisions, this Court has recognized that whether a law is special or general can most easily be determined by looking to whether the categories created under the law are open-ended or fixed, based on some immutable characteristic. *Harris*, 869 S.W.2d at 65. A law is general or "open-ended" if "the status of a political subdivision under [the] classification could

change." *State ex rel. City of Blue Springs v. Rice*, 853 S.W.2d 918, 921 (Mo. banc 1993); *Harris*, 869 S.W.2d at 65. "Legislation that is not open-ended typically singles out one or a few political subdivisions by permanent characteristics." *O'Reilly v. City of Hazelwood*, 850 S.W.2d 96, 99 (Mo. banc 1993). And, "[c]lassifications based on historical facts, geography, or constitutional status focus on immutable characteristics and are therefore *facially special laws*." *Harris*, 869 S.W.2d at 65 (emphasis added); *Tillis v. City of Branson*, 945 S.W.2d 447, 449 (Mo. banc 1997).

Without dispute, sections 92.086.10(1) and (2) specifically exempt only certain cities from compliance with sections 92.086.6 and 92.086.9. Section 92.086.10(1) applies to "any" municipality that enacted an ordinance imposing a business license tax on companies providing wireless telephone service prior to November 4, 1980, the date Hancock was adopted. This sounds limited and close-ended, but the immediately following section says the exemption also applies to "any" municipality that, after that date, adopted a similar business license tax by vote of the people. If the requirements for exemption had ended there, the statute would appear to be open-ended, for a city that had not adopted an ordinance imposing such a tax already would be permitted to join the class once it did so by public vote.

But sections 92.086.10(1) and (2) contain an additional requirement. In order to qualify for the exemption, a municipality must have "taken affirmative action to collect such tax from wireless telecommunications providers prior to January 15, 2005." In other words, the sections require a municipality to *both adopt and enforce* such an ordinance *before* January 15, 2005. Section 92.086.10 was not enacted until *after* January 15, 2005, and did not become effective until August 28, 2005. By those

dates, the class of cities that could come within this exemption was fixed, based on an immutable, historical fact: whether an ordinance meeting the specifications of section 92.086.10 had or had not already been passed and enforced by the city prior to January 15, 2005.

This Court has consistently found similar statutes to be special laws. *Laclede Power & Light Co. v. City of St. Louis,* 353 Mo. 67, 182 S.W.2d 70 (1944), is directly on point. In *Laclede,* St. Louis adopted a franchise tax on gross receipts for the supply of electric power. One company, Union Electric, paid the tax, but Laclede did not because its charter had been issued before the tax was enacted; thus, the tax arguably did not apply to it in that circumstance. St. Louis wished to collect a tax from Laclede also, so it adopted another ordinance imposing a license tax on all electric companies, but providing that those companies that previously complied with an earlier ordinance and paid the franchise tax on their gross receipts were exempt. *Id.* at 71.

This Court found the license tax was a special law because it "puts Union [Electric] in a fixed class [exempt from the license tax] into which neither plaintiff nor anyone else could ever come...." *Id.* at 73. By limiting the class to a company that had accepted and continually complied with an earlier ordinance, the class would always contain only one company, Union Electric. *Laclede* concluded, "this makes this ordinance a prohibited special law," invalid under the Missouri Constitution.

*Id.* at 73. The law was invalid because it singled out particular entities that would not have to pay the newly imposed tax, based solely on whether they had previously paid a different tax.

Later cases are in accord. *Blue Springs,* 853 S.W.2d 918, applied the constitutional limitation on special laws to a classification based on "population at a specific time before the enactment of the clause." *Id.* at 921. Because it was "completely impossible that the status of a political subdivision under [the] classification could change," *id.,* this Court found the classification was based on an immutable characteristic and was invalid.[11] *Tillis* is also directly applicable. At issue was a tourism tax imposed only on cities "located in a county that borders the state of Arkansas" and that met particular population and hotel capacity characteristics. 945 S.W.2d at 448. In fact, only a single city—Branson—actually met all the requirements. Because the class of cities that could qualify was close-ended, the law was a special one and, therefore, violated the constitutional bar on special laws unless "substantial justification" for this special treatment could be shown. Such justification was not shown, and the law was struck down. *Id.* at 449.

Similarly, Springfield alleges that section 92.086.10 describes a fixed group of cities into which it appears only two cities may fit—Jefferson City and Clayton—both of which had enacted and enforced an ordinance imposing a license tax on wireless telephone service prior to January 15,

---

11. Similarly, *Reals,* 164 S.W.2d at 309, held that a classification based on a county's population will be found to be close-ended even if there is a theoretical possibility that another could meet the population requirement where the likelihood that a county would experience such a radical population shift within the 5-year period permitted was so small as to be practically "inconceivable." *See also Harris,*

869 S.W.2d at 65 (law that exempted only riverboats located in a specific geographical location, and of a very specific size and type, from the gambling statute's appearance and docking prohibitions, was facially special law since it in fact could apply to only certain boats, regardless of its theoretically broader scope).

2005. Sprint suggests that it is possible other, as yet unidentified, cities may fit within this special category also. This misses the point. "The focus is not on the size of the class comprehended by the legislation . . . the issue is the nature of the factors used in arriving at that class." *Id.*

What was constitutionally fatal in *Laclede, Tillis, Blue Springs* and similar cases, and what is constitutionally fatal here, is the fact that the statute's classifications are, and were, based on immutable characteristics. The nature of the factors, or characteristics, is set, solid, and fixed. Just as one cannot change a geographical location, or the number of people who lived in an area as of the date of a past census, there is no changing actions completed or left incomplete at a date set in the past, prior to the current Act's enactment. It is impossible for the status of the excluded cities to change because the excluded cities did not take the specified actions prior to the necessary date, a date prior to the Act's passage. Thus, none of the excluded cities may join the class of exempt cities.

Because section 92.086.10 puts the exempt cities into "a fixed class . . . into which neither [Springfield] nor anyone else could ever come," *Laclede*, 182 S.W.2d at 73, it is a facially special law.

### B. Lack of Substantial Justification for Special Law.

 As the statute's classification is fixed and not open-ended, *"instead of presuming that it is constitutional, the presumption is that it is unconstitutional."* *O'Reilly*, 850 S.W.2d at 99 (emphasis added). The burden, therefore, shifts to Sprint, as the party defending the statute, to show that it is constitutional. In order to meet this standard, the mere existence of a rational or reasonable basis for the classification is insufficient. *Harris*, 869 S.W.2d at 65–66. Sprint "must demonstrate a *substantial justification* to exclude other [political subdivisions]." *O'Reilly*, 850 S.W.2d at 99 (emphasis added); *Blue Springs*, 853 S.W.2d at 921. And, in so showing it cannot rely on a legislative determination that a special law was necessary, for "whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject." Mo. Const. art. III, sec. 40(30).

Sprint argues that the statute was substantially justified because the classification bases the exemption on whether a city had enacted an ordinance that did not violate Hancock. Mo. Const. art. X, sec. 22. This, it argues, differentiates its rationale for the exemption from those found insufficient in prior cases, for it was always within a city's power to comply with Hancock.[12]

Sprint's argument is unpersuasive on two grounds. First, Sprint is inaccurate to the extent it suggests that it is always within a city's power to come within the Act by complying with Hancock. As noted above, only cities that enforced an appropriate ordinance prior to January 15, 2005, could come within the class. By the time the Act took effect, no other city could join the class, even if it then had enacted or thereafter enacted a Hancock-compliant ordinance of some type.

Second, if the distinction Sprint seeks to draw is between those cities whose ordinances comply with Hancock and those

---

**12.** Sprint also argues that adoption of the Act was an attempt by the legislature to achieve a balance between the needs of utilities and cities. Most legislation is an attempt to balance the needs of citizens or businesses. Such is not a basis to ignore constitutional requirements. "Regardless of legislative intent, it should be obvious that a statute cannot supercede a constitutional provision." *Doe*, 862 S.W.2d at 341.

that do not, then the legislature could have enacted a generally applicable law that stated just that. There is no justification offered for denying the exemption to other cities that enacted a Hancock-compliant ordinance after January 15, 2005, or to any city the license tax of which was found by a court to comply with Hancock for other reasons, such as that the city had validly enacted a tax on "telephone service" that a court found was applicable to wireless as well as land line telephones even though it did not contain the words set out in section 92.086.10.[13]

*Planned Industrial Expansion Authority of City of St. Louis v. Southwestern Bell Tel. Co.*, 612 S.W.2d 772, 777 (Mo. banc 1981), held invalid a statute giving telephone utilities a property interest in land over which they had held only a license while not giving comparable benefit to other utilities whose lines ran under the land. *See also O'Reilly*, 850 S.W.2d at 99 (creation of boundary commission reasonable, but no substantial justification shown for making it applicable only to St. Louis suburbs); *State ex rel. Bunker Resource Recycling & Reclamation v. Mehan*, 782 S.W.2d 381, 384–85 (Mo. banc 1990) (while state's purpose in barring burning of infectious waste by persons who did not get all necessary permits in 1987 might be valid, purpose had equal application to persons who engaged in such conduct in other years or who otherwise failed to seek proper permits and did not justify special law).

In sum, regardless of whether a city's tax statutes comply with Hancock, section 92.086.10 does not exempt it from the 5 percent tax limit unless it had "taken affirmative action to collect such tax from wireless telecommunications providers prior to January 15, 2005." *Id.* It creates a fixed, close-ended class. Sprint has not met its burden to show substantial justification for the fixed classification of section 92.086.10. That section is a special law prohibited by article III, section 40(30) of the Missouri Constitution.

*C. Severability of Sections 92.074 to 92.089.*

The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Sec. 1.140, RSMo 2000.[14]

Here, there is no question whether the legislature would have passed the remaining sections of the Act without the offending provision. Section 92.092 specifically contains a "nonseverability" clause stating:

If a court of competent jurisdiction enters a final judgment on the merits that

---

13. *See, e.g., City of Sunset Hills v. Southwestern Bell Mobile Sys., Inc.*, 14 S.W.3d 54, 59 (Mo.App. E.D.1999) (explicitly stating court found it absurd to deny that companies providing "wireless communications services" were a part of the class of "telephone companies" subject to a telephone business license fee); *City of Jefferson & City of Springfield v. Cingular Wireless, L.L.C. et al.*, No. 04–4099–CV–C–NKL at 8, 2005 WL 1384062 (W.D.Mo. June 9, 2005) (wireless service subject to city business license tax because "[p]eople understand that if you put it up to your ear and you speak into a microphone and someone some distance away is able to hear you, you are using a telephone").

14. *See also State ex rel. Audrain County v. Hackmann*, 275 Mo. 534, 205 S.W. 12, 14 (1918) ("The test of the right to uphold a law,

is not subject to appeal and that declares any provision or part of sections 92.074 to 92.089 unconstitutional or unenforceable then sections 92.074 to 92.089, in their collective entirety, *are invalid and shall have no legal effect as of the date of such judgment.*

Sec. 92.092 (emphasis added). Pursuant to this clause, sections 92.074 to 92.089 are invalid in their entirety.

### D. Severability of Section 71.675.

 The City asks this Court also to hold section 71.675, which was included in H.B. 209, invalid as a special law because it bars municipalities from filing class action lawsuits against telecommunications companies for unpaid taxes, but does not bar those companies from filing class action lawsuits against municipalities, and arbitrarily shields only telecommunications companies from class actions to collect business license taxes.[15]

 Unlike sections 92.074 to 92.089, the legislature specifically set out its intent that section 71.675 *is* severable from the other provisions of H.B. 209, stating in relevant part:

> The provisions of section 71.675, RSMo, are severable from the provisions of sections 92.074 to 92.092. If any portion of sections 92.074 to 92.092 is declared unconstitutional ... section 71.675, RSMo,

and its applicability to any person or circumstance shall remain valid and enforceable.

Sec. 92.095. Section 71.675, thus, must stand or fall on its own merit. Importantly, section 71.675 is prospective in nature. It applies only to future class action suits. It *does not affect this case*, which was filed prior to its enactment and which is not a class action. Consequently, this Court need not, and in fact may not, address the City's argument that the section is arbitrary and unreasonable. To do so would be to render an advisory opinion, which is outside this Court's authority. *Schottel v. State*, 159 S.W.3d 836, 841 (Mo. banc 2005) ("[t]his Court cannot offer advisory opinions on issues that may arise in the future").

## IV. CONCLUSION

For the reasons stated herein, the judgment is reversed, and the cause is remanded.

WOLFF, C.J., TEITELMAN, LIMBAUGH, and WHITE, JJ., and BAKER and HOLLIGER, Sp.JJ., concur.

PRICE and RUSSELL, JJ., not participating.

---

some portions of which may be invalid, is whether or not in so doing, after separating that which is invalid, a law in all respects complete and susceptible of constitutional enforcement is left, which the Legislature would have enacted if it had known that the exscinded portions were invalid").

**15.** Section 71.675 states:
1. Notwithstanding any other provision of law to the contrary, no city or town shall bring any action in federal or state court in this state as a representative member of a class to enforce or collect any business license tax imposed on a telecommunications company. A city or town may, individually

or as a single plaintiff in a multiple-plaintiff lawsuit, bring an action in federal or state court in this state to enforce or collect any business license tax imposed on a telecommunications company.
2. Nothing in this section shall be construed to preclude any taxpayer from initiating an action in federal or state court as a representative member of a class seeking injunctive relief against the Missouri department of revenue to enforce the imposition, assessment, or collection of the business license tax provided under sections 92.074 to 92.095, RSMo.