COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | | |
|---|---|---|---|
| LAWRENCE FEW, | § | No. 08-06-00005-CR | |
| Appellant, | § | Appeal from the | |
| V. | § | 168th District Court | |
| THE STATE OF TEXAS, | § | of El Paso County, Texas | |
| Appellee. | § | (TC# 2005ODO4727) | |
| | § | | |
| | § | | |

**O P I N I O N**

Lawrence Few appeals his conviction for criminal solicitation to commit capital murder. He was sentenced by a jury to 50 years' imprisonment and fined $5,000. He brings ten issues on appeal. Issue One challenges the legal and factual sufficiency of the evidence. Issues Two, Nine, and Ten assert denial of effective assistance of counsel. In Issues Three and Four, he contends that he did not consent to be represented by his trial counsel and that the trial court abused its discretion by not granting him a continuance to secure new counsel before trial. In Issue Five, Appellant asserts that the trial court denied him his right to self- representation. Issues Six, Seven, and Eight allege the trial court erred in failing to hold a competency hearing, and allow an exam; and in failing to grant a continuance.

In August of 2003, Appellant was jailed at the El Paso County Jail Annex on Montana Avenue in East El Paso for a probation violation. Specifically, he was housed in the prison medical ward. There, he met inmate Arnulfo Gonzalez. Mr. Gonzalez would be the State's

primary witness at Appellant's trial. When the two men met, Mr. Gonzalez told Appellant that he was a member of a drug cartel in Juarez, Mexico. In an attempt to get Appellant to transfer prison funds to his account, Mr. Gonzalez offered to help Appellant hire other criminals if Appellant "needed anything done" outside prison. Appellant told Mr. Gonzalez that he believed his wife was stealing money from his business, that she was hiding assets from him, and that she was cheating on him. When Appellant discussed his wife, and the offenses he believed she committed against him, he became extremely angry.

Several days after their initial encounter, Appellant passed Mr. Gonzalez a note which said that Appellant wanted Mr. Gonzalez to "take care of" his wife. When Mr. Gonzalez asked Appellant what he meant by that, Appellant indicated that Mr. Gonzalez should use his criminal contacts to kill his wife. Appellant continued to badger Mr. Gonzalez about how and when his wife would be murdered. On several occasions, Appellant made demands as to how he wanted his wife murdered. First, Appellant told Mr. Gonzalez to have illegal drugs planted on her body and then to roll her car off a cliff, making sure that the gas tank caught fire as the vehicle fell. On another occasion, Appellant told Mr. Gonzalez to have his wife followed to a hotel where he wanted her photographed having sex with another man. Then the killer was to tell Appellant's wife "[y]ou should have stayed with [Appellant]," or "[t]his is for [Appellant]" before he killed her. Appellant provided details about his wife's life, including the location of her home and her work schedule. The two men negotiated prices for everything from photographs of Appellant's wife engaged in adultery, to plots resulting in serious injury, and for her murder. Appellant also offered a bonus amount if the contract was performed before a certain date. Appellant transferred a small amount of money into Mr. Gonzalez's prison account as a down payment on

-2-

their plans.

As days passed without news that anything had happened to his wife, Appellant became very angry. Eventually, Appellant asked Mr. Gonzalez to personally kill his wife when he got out of jail. Appellant instructed Mr. Gonzalez to go to her home around 8:30 in the morning. He was supposed to meet Appellant's wife as she was leaving for work and ask for a ride to a gas station as if his car had run out of gas. When they were both in the car, Mr. Gonzalez was instructed to compliment her appearance, offer to take her our for a beer, and then kill her.

Mr. Gonzalez attempted to report Appellant's plans to prison officials after Appellant arranged to have money transferred into his prison account. After several attempts at reporting Appellant's activities, Mr. Gonzalez was contacted by a sheriff's detective. El Paso County Sheriff's Detective Durning took Mr. Gonzalez's statement. The detective also took possession of the written correspondence which had been passed between Appellant and Mr. Gonzalez.

After verifying that money had been transferred from Appellant's prison commissary account to Mr. Gonzalez's account, Detective During escorted Appellant from the jail annex, to the nearby sheriff's substation for an interview. Detective During was joined by Detective Terrazas while Appellant gave his statement. Appellant was informed of the nature of the accusations that had been made against him, and was provided his Miranda warnings. Appellant's statement contains his handwritten initials at the close of each sentence of the admonishments.

According to Appellant's statement, Mr. Gonzalez introduced himself to Appellant shortly after being moved into the medical ward. Mr. Gonzalez told Appellant that he was a "powerful Mexican drug dealer and killer" and indicated to Appellant that they had mutual

-3-

acquaintances. Appellant stated that Mr. Gonzalez seemed to know all about his business and family, and explained that Mr. Gonzalez told him about his wife's adulterous activities and that he knew the men she was having the affairs with. Appellant stated that Mr. Gonzalez was able to describe his wife's physical appearance in extraordinary detail, and that Mr. Gonzalez had associates who had seen Appellant's wife doing drugs.

Appellant told Mr. Gonzalez that he wanted photos and video of his wife engaging in these adulterous and illegal activities to "shake her up and to return to our marriage and to be faithful again." According to Appellant's statement it was at this point that Mr. Gonzalez told him he would sell the information Appellant wanted, and that it was Mr. Gonzalez who said he wanted to kill Appellant's wife. Appellant admitted that he created a map of the location of his wife's home, but stated that he told Mr. Gonzalez that his associates should only go there to seduce his wife and take photographs. Appellant also admitted that he told Mr. Gonzalez he would pay $16,000 for the photographs, or "for her to get in a wreck" and another $2,000 "when completed." Appellant maintained that Mr. Gonzalez was the only person who talked about killing his wife. Appellant told the detectives that the notes in which he wrote that he wanted his wife dead were written because Mr. Gonzalez forced him, and threatened him with physical violence. Appellant stated that Mr. Gonzalez threatened him constantly, and that he only followed Mr. Gonzalez's instructions because he was afraid. Appellant made numerous corrections and additions to the statment in his own handwriting before initialing each paragraph, and signing the statement.

Appellant was indicted on November 13, 2003 for criminal solicitation to commit capital murder. Appellant was re-indicted for the same offense under a new cause number on

-4-

October 11, 2005. The original indictment was dismissed. Appellant was convicted by a jury and sentenced to fifty years' imprisonment and assessed a $5,000 fine on November 3, 2005. Appellant filed a *pro se* notice of appeal under the dismissed cause number. The State filed a motion to dismiss the appeal for lack of jurisdiction arguing that because Appellant's notice of appeal was filed under the wrong cause number, he failed to perfect the appeal. This Court granted the State's motion and dismissed the appeal for lack of jurisdiction. *See Few v. State*, No. 08-06-00005-CR, 2006 WL 957703 (Tex.App.--El Paso 2006, no pet.h.)(not designated for publication), *rev'd*, 230 S.W.3d 184 (Tex.Crim.App. 2007). The Texas Court of Criminal Appeals reversed the order of dismissal and reinstated the appeal. *See Few v. State*, 203 S.W.3d 184 (Tex.Crim.App. 2007).

In Issue One, Appellant challenges the legal and factual sufficiency of the evidence supporting his conviction. In a legal sufficiency review, we must consider all of the evidence in a light most favorable to the verdict, and determine whether a reasonable minded juror could have found the essential elements of the charged crime were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). We must defer to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13.

In a factual sufficiency review, we consider all the evidence in a neutral light. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007). Evidence is factually insufficient if: (1) the evidence supporting the verdict is so weak that it renders the verdict clearly wrong and manifestly unjust; or (2) the evidence supporting the verdict is outweighed by the great weight

and preponderance of the evidence, so that the verdict is clearly wrong, or manifestly unjust. *Id.* We cannot reverse a conviction under the "clearly wrong" or "manifestly unjust" standards simply because, based on the quantum of evidence admitted, we would have voted to acquit. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Nor can we declare that a conflict in the evidence justified a new trial because we disagree with the jury's resolution of the conflict. *Id.* A new trial will only be granted when the reviewing court determines, on an objective basis, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In addition, our review should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *see also Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006)(factual sufficiency review continues to require "due deference" be given to the jury's determinations).

A person commits the offense of criminal solicitation of capital murder if, with the intent that a [capital felony] be committed, he requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute a felony or make the other a party to its commission. TEX.PENAL CODE ANN. § 15.03(a)(Vernon 2003); *Whatley v. State*, 946 S.W.2d 73, 79 (Tex.Crim.App. 1997). The solicitation is complete when the defendant has intent, and acts to induce another to engage in felonious conduct. *Whatley*, 946 S.W.2d at 79. We must also establish that the defendant acted with the specific intent that a capital felony be committed. *Thomas v. State*, 31 S.W.3d 422, 424 (Tex.App.--Fort Worth 2000, pet. ref'd).

Appellant argues the State failed to offer sufficient evidence that he subjectively intended

-6-

for his wife to be murdered. Based on our review of the record, the jury's determination that Appellant did act with specific intent to have his wife murdered depended on the weight and credibility determinations surrounding Mr. Gonzalez's testimony and the notes which passed between the two men. As summarized above, Mr. Gonzalez testified consistently that he understood that Appellant wanted his wife murdered. Appellant asserts that a number of the writings the State offered into evidence indicated that he only wanted his wife photographed, and possibly harmed, but that he specifically stated he did not want his wife to be killed. While the record does contain a note in which Appellant instructed Mr. Gonzalez that he only wanted his wife killed "only if something goes wrong," the jury was free to weigh this evidence against the remainder of Mr. Gonzalez's testimony as well as the rest of the written messages and conclude that Appellant did have the specific intent for his wife to be murdered. Having reviewed the entire record both in the light most favorable to the verdict, and in a neutral light, we conclude that the evidence was legally and factually sufficient to support the conviction. Issue One is overruled.

In Issues Two, Nine, and Ten, Appellant contends that he was denied his constitutional right to effective assistance of counsel. Appellant argues specifically that his trial attorney was ineffective by failing to object to an alleged deficiency in the indictment, by failing to offer any witness testimony or other evidence for Appellant's defense, and by failing to raise an insanity defense on Appellant's behalf.

We review claims of ineffective assistance of counsel under the two-step analysis adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex.Crim.App. 1999).

-7-

Under the first prong, the defendant must show that counsel's performance was deficient to the extent that counsel failed to function as the "counsel" guarnteed by the Sixth Amendment. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Allegations of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001). The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Id*. When the record is silent as to counsel's motivations for tactical decisions, the appellant usually cannot overcome the strong presumption that counsel's conduct is reasonable. *Id*. In most cases on direct appeal, the record is not sufficiently developed and cannot adequately demonstrate the motives behind counsel's decisions. *Id*.

Under the second prong, the defendant must establish that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Jackson*, 877 S.W.2d at 771. Prejudice is established by a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 644 U.S. at 694, 104 S.Ct. at 2068; *Jackson*, 877 S.W.2d at 771. The prejudice analysis need not be addressed when the appellant fails to satisfy the first prong of the analysis. *See Mallett*, 65 S.W.3d at 68.

Appellant did not file a motion for new trial following his conviction. Therefore, we have no record explaining counsel's thought processes, or lack thereof, regarding the actions Appellant now complains of. Without a record explaining counsel's actions, we cannot determine that counsel was constitutionally deficient unless we determine the conduct was, "so

outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005). Appellant has failed to point to any passage in the record, and he has not provided this Court with any authority, from which we could conclude that the actions complained of are so far outside the range of reasonable professional assistance as to be deemed deficient without the benefit of additional evidence. Therefore, Appellant has failed to carry his burden under the first prong of the *Strickland* test on all three of his ineffective assistance claims. *See Garcia v. State*, 57 S.W.3d 436, 440-41 (Tex.Crim.App. 2001). Issues Two, Nine, and Ten are overruled.

Issues Three and Four also deal with Appellant's dissatisfaction with his representation at trial. In Issue Three, Appellant contends that he did not consent to be represented by his trial counsel, and that the trial court erroneously denied his attempts to have the attorney removed. In Issue Four, Appellant asserts the trial court erred by not granting a continuance to allow him to secure different counsel.

A defendant's Sixth Amendment right to assistance of counsel includes a defendant's right to obtain assistance from counsel of the defendant's choosing. *Gonzalez v. State*, 117 S.W.3d 831, 836-37 (Tex.Crim.App. 2003). However, this right is not without limitations. *Id*. While there is a strong presumption in favor of a defendant's right to retain counsel of choice, this presumption may be overridden by other important considerations related to the integrity of the judicial process, and the fair and orderly administration of justice. *Id*. "The right to counsel of one's choice is not absolute, and may under some circumstances be forced to bow to 'the general interest in the prompt and efficient administration of justice.'" *Rosales v. State*, 841 S.W.2d 368, 374 (Tex.Crim.App. 1992). In addition, this right may not be manipulated so as to

obstruct the judicial process. *Wallace v. State*, 618 S.W.2d 67, 70 (Tex.Crim.App. 1981). Accordingly, a constitutional violation occurs when the trial court "unreasonably or arbitrarily" interferes with the defendant's right to choose counsel. *Gonzalez*, 117 S.W.3d at 837.

Appellant was originally indicted in 2003. Between that time and the time of trial, four different attorneys appeared on Appellant's behalf. Throughout all four representations, Appellant continued to file numerous *pro se* motions including requests for DNA tests on his children, audits to uncover "IRS fraud" related to his former business, to appoint himself as cocounsel, and a motion "to explore the possibility of immediate deportation of [Appellant's wife] to France if she has committed fraud, embezzlement, tax evasion, or indecent exposure or lewd and lascivious acts were seen by [Appellant's] children." Two of Appellant's attorneys cited irreconcilable differences regarding how to pursue Appellant's defense as a basis for their motions to withdraw. Those same two attorneys also indicated that Appellant made inconsistent statements regarding the status of their representation, telling the lawyers that they were "fired" at the same time he made demands for specific motions to be filed.

Appellant's fourth attorney was Mr. Joseph Vasquez. Mr. Vasquez entered his first appearance on Appellant's behalf on August 29, 2005. On September 26, 2005, Appellant personally filed a motion to terminate Mr. Vasquez's representation. The following day, Appellant filed another motion to terminate the representation. No action was taken on either motion. Finally, on the eve of trial, Appellant filed two additional *pro se* motions. The first was a motion for continuance. The second was another motion to terminate Mr. Vasquez as his attorney. In his motion, Appellant complained that Mr. Vasquez had not filed pretrial motions, and did not plan to call any witnesses in his defense. At a hearing just prior to jury selection, the

trial court denied both motions citing the history of Appellant's representation in the case and expressed concerns over what the court perceived to be Appellant's dilatory tactics. Appellant did not indicate that he had retained a different attorney to replace Mr. Vasquez, or that he was prepared to do so.

Appellant's argument, in Issue Three, that he never consented to Mr. Vasquez's representation was never raised by motion or in person to the trial court. The record shows that Appellant's trial counsel appeared on his behalf in several pretrial hearings, during which Appellant never expressed any concern that he did not consent to the representation. Appellant's *pro se* motion for termination of counsel also failed to raise such a concern. Therefore, pursuant to TEX.R.APP.P. 33.1, the argument has not been preserved for our review.

Appellant also argues, in Issue Three, that the trial court violated his right to have the assistance of counsel of his choice. The record shows that at the time he filed his motions to terminate Mr. Vasquez's representation, Appellant had established a pattern of uncooperative, disruptive, and dilatory behavior surrounding his relationships with his various attorneys and the trial court. Even in the case of retained counsel, it is the defendant's burden to establish that he is entitled to a change of counsel. *See King v. State*, 511 S.W.2d 32, 34 (Tex.Crim.App. 1974). Appellant's motions are devoid of any grounds for dismissing his trial attorney, save his blanket assertion that the interests of justice required it. In addition, the record refutes Appellant's assertion that Mr. Vasquez had failed to file any pretrial motions. The trial court was within its discretion to conclude that Appellant's motion was an attempt to delay and manipulate the proceedings. Accordingly, the trial court's decision to deny Appellant's motion was not an abuse of discretion. Issue Three is overruled. For the same reasons, the trial court's decision to deny

-11-

Appellant's motion for continuance to secure new counsel was not in error. Accordingly, Issue Four is also overruled.

In Issue Five, Appellant asserts that the trial court violated his Sixth Amendment right to self-representation. Appellant argues that the trial court was put on notice of Appellant's desire to proceed *pro se* by the number of *pro se* motions he filed, and because his trial counsel's own motion to withdraw was based, in part, on Appellant's assertions to his attorney that he wished to represent himself. The State responds that Appellant did not clearly and unequivocally inform the trial court of his desire to represent himself.

A defendant's Sixth Amendment right to counsel also includes a reciprocal right to self-representation. *See Faretta v. California*, 422 U.S. 806, 818, 95 S.Ct. 2525, 2532-33, 45 L.Ed.2d 562 (1975); *Moore v. State*, 999 S.W.2d 385, 396 (Tex.Crim.App. 1999). The right to self-representation does not attach, however, until it has been clearly and unequivocally asserted to the trial court. *See Ex parte Winton*, 837 S.W.2d 134, 135 (Tex.Crim.App. 1992). When analyzing a defendant's purported assertion of his right to self-representation, the defendant's statements or actions must be examined in their proper context. *See DeGroot v. State*, 24 S.W.3d 456, 458 (Tex.App.--Corpus Christi 2000, no pet.).

Appellant does not cite to a point in the record where he unequivocally informed the trial court that he wanted to exercise his right to self-representation. In addition, Mr. Vasquez's statement in a pretrial motion to withdraw that Appellant expressed a desire to proceed *pro se* is not sufficient to satisfy the requirement that the defendant made an unequivocal request to the trial court, and cannot be taken out of the context of the proceedings. *See DeGroot*, 24 S.W.3d at 458.

Prior to trial, Appellant had obtained the services of four different attorneys, three of whom either withdrew from the case on their own motion, or because Appellant terminated the representation. At the time Appellant purportedly informed Mr. Vasquez that he wanted to represent himself, the trial court was in the midst of yet another potential change in Appellant's representation. Appellant's pending motions to terminate Mr. Vasquez's representation give no indication that he wished to proceed *pro se*. If anything, the motions seem to contemplate that Appellant intended to hire yet another attorney. Given the nature of Appellant's "request," and the context in which it was made, we conclude Appellant failed to clearly and unequivocally assert his right to self-representation. Therefore, Issue Five is overruled.

In Issues Six, Seven, and Eight, Appellant argues the trial court abused its discretion by failing to conduct a competency exam and hearing, and by failing to grant two continuances. Except for general statements that these issues are reviewed for an abuse of discretion, Appellant's brief is totally without citation and legal argument. Rule 38.1(i) of the Texas Rules of Appellate Procedure requires that an appellant's brief contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP.P. 38.1(i). Failure to provide the appellate court with substantive analysis of the questions raised waives review. *See Salazar v. State*, 38 S.W.3d 141, 147 (Tex.Crim.App. 2001). Appellant has failed to proffer any authority supporting his contentions. Therefore, the arguments are inadequately briefed and present nothing for this Court to review. *See Todd v. State*, 911 S.W.2d 807, 819 (Tex.App.--El Paso 1995, no pet.). Accordingly, Issues Six, Seven, and Eight are overruled.

Having overruled all of Appellant's issues, we affirm the trial court's judgment.

-13-

July 15, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., Ables, Judge, and Gomez, Judge
Ables, Judge (Sitting by Assignment)(Not Participating)
Gomez, Judge (Sitting by Assignment)

(Do Not Publish)